# United States Court of Appeals for the Federal Circuit

WOODWAY USA, INC.,

*Appellant,*

v.

LIFECORE FITNESS, LLC dba Assault Fitness

*Appellee.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in IPR2023-00843

## RESPONSE BRIEF OF APPELLEE

Andrew B. Turner
John M. Halan
John S. LeRoy
Kyle G. Konz
BROOKS KUSHMAN P.C.
150 W. Second St., Suite 400N
Royal Oak, MI 48067-3846
(248) 358-4400

*Counsel for Appellee*

May 19, 2025

# U.S. Patent No. 10,561,884 PATENT CLAIMS AT ISSUE

30. A manually powered treadmill, comprising:
a frame having a front end and a rear end positioned opposite the front end;
a front shaft coupled to the frame proximate the front end;
a rear shaft coupled to the frame proximate the rear end;
a plurality of bearings coupled to the frame;
a running belt at least partially supported by the plurality of bearings, wherein the running belt comprises a curved running surface; and
a safety device coupled to the frame and the running belt, the safety device having a first rotatable element and a second rotatable element, wherein at least one of the first and second rotatable elements are adapted for rotation relative to the frame;
wherein the running belt and one of the first and second rotatable elements of the safety device freely rotate in a first direction of rotation relative to the other of the first and second rotatable elements of the safety device, but interference between the safety device and at least one of the first and second rotatable elements substantially prevents rotation in a second direction of rotation, opposite the first direction of rotation, of the running belt and the one of the first and second rotatable elements relative to the other of the one of the first and second rotatable elements.

31. The manually powered treadmill of claim 30, wherein the frame includes a left side member, a right side member, and at least one cross-member extending between the left side member and the right side member, wherein the plurality of bearings includes a first plurality of bearings coupled to a left-side of the frame and a second plurality of bearings coupled to a right-side of the frame.

32. The manually powered treadmill of claim 31, wherein the first plurality of bearings and the second plurality of bearings each at least partially define a curved top profile, wherein the curved top profile substantially corresponds to at least a portion of the curved running surface.

i

33. The manually powered treadmill of claim 30, wherein the first and second rotatable elements of the safety device at least partly form a one-way bearing.

34. The manually powered treadmill of claim 30, further comprising at least one support foot coupled to the frame, wherein the at least one support foot is adjustable to enable an adjustment of the relative vertical incline of at least a portion of the manually powered treadmill in relation to a surface supporting the manually powered treadmill.

37. A manually powered treadmill, comprising:
a frame;
a first plurality of bearings coupled to the frame;
a second plurality of bearings coupled to the frame and spaced a distance from the first plurality of bearings;
a front shaft assembly coupled to the frame;
a rear shaft assembly coupled to the frame;
a running belt at least partially supported by the first plurality of bearings and the second plurality of bearings, the running belt being at least partially disposed about the front and rear shaft assemblies, and comprising a running surface, at least a portion of which is curved; and
a safety device coupled to the frame and the running belt, the safety device having a first rotatable element and a second rotatable element, wherein at least one of the first and second rotatable elements are adapted for rotation relative to the frame;
wherein one of the first and second rotatable elements of the safety device and the running belt freely rotate relative to the other of the one of the first and second rotatable elements of the safety device in a first direction of rotation relative to the frame, however, in a second direction of rotation, opposite the first direction of rotation, interference between the safety device and at least one of the first rotatable element and the second rotatable element substantially prevents rotation of the running belt and the one of the first and second rotatable elements relative to the other of the one of the first and second rotatable elements.

38. The manually powered treadmill of claim 37, wherein the first and second rotatable elements of the safety device at least partly form a one-way bearing.

39. The manually powered treadmill of claim 37, wherein the front shaft assembly comprises a front shaft coupled to frame.

41. The manually powered treadmill of claim 37, wherein the rear shaft assembly comprises a rear shaft coupled to the frame.

45. The manually powered treadmill of claim 37, further comprising at least one support foot coupled to the frame, wherein the at least one support foot is adjustable to enable an adjustment of the relative vertical incline of at least a portion of the manually powered treadmill in relation to a surface supporting the manually powered treadmill.

46. The manually powered treadmill of claim 37, wherein the running belt is at least partially supported by the first plurality of bearings and the second plurality of bearings.

47. The manually powered treadmill of claim 46, wherein each of the first and second pluralities of bearings define a curved top profile and wherein the curved top profile substantially corresponds to at least a portion of the curved portion of the running surface.

48. The manually powered treadmill of claim 37, wherein the frame includes a left side member, a right side member spaced a distance from the left side member, and at least one cross-member extending between the left side member and the right side member.

49. The manually powered treadmill of claim 48, wherein the first plurality of bearings are coupled the left side member and the second plurality of bearings are coupled to the right side member.

57. A method, comprising:
providing a manually powered treadmill, the manually powered treadmill having a frame with a front end and a rear end;
providing a plurality of bearings coupled to the frame, wherein the plurality of bearings define at least a portion of a curved top profile;
disposing a running belt on the plurality of bearings such that the curved top profile of plurality of bearings define at least a portion of a curved running surface of the running belt;

providing a safety device coupled to the frame and to the running belt, the safety device having a first rotatable element and a second rotatable element, wherein at least one of the first and second rotatable elements are adapted for rotation relative to the frame;
permitting rotation of one of the first and second rotatable elements of the safety device and the running belt in a first direction of rotation; and substantially preventing rotation in a second direction, opposite the first direction, of the running belt and the one of the first and second rotatable elements by interference between the safety device and at least one of the first rotatable element and the second rotatable element.

59.A method according to claim 57, further comprising providing for the adjustment of the vertical incline of at least a portion of the running surface.

# CERTIFICATE OF INTEREST

Counsel for LifeCORE Fitness, LLC, certifies the following:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. LifeCore Fitness, LLC d/b/a Assault Fitness

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

FitLab Inc.

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. FitLab Inc.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4). Brooks Kushman P.C.; Rebecca J. Cantor; Seyed Reza Roghani Esfahani

5. **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the

pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir. R. 47.5(b).

a. No appeal in or from the same proceeding was previously before this or any other appellate court; and

b. The patent at issue in this appeal is also at issue in *Woodway USA, Inc.* v. *LifeCore Fitness, Inc.* No. 2025-1431, which originated in the United States District Court for the Southern District of California as *Woodway USA, Inc., v. LifeCORE Fitness, Inc. d/b/a Assault Fitness,* Case No. 3:22-cv-00492.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6). Not Applicable

# TABLE OF CONTENTS

U.S. Patent No. 10,561,884 PATENT CLAIMS AT ISSUE ...................... i

CERTIFICATE OF INTEREST ................................................................ v

TABLE OF AUTHORITIES ..................................................................... x

TABLE OF ABBREVIATIONS ............................................................... xii

STATEMENT OF RELATED CASES ..................................................... xiii

STATEMENT OF THE ISSUES ............................................................... 1

STATEMENT OF THE CASE .................................................................. 2

    A.    The '884 Patent ...................................................................... 4

    B.    The Prior Art ........................................................................ 11

        1.    U.S. Patent No. 3,637,206 ("Chickering") .................... 11

        2.    U.S. Patent No. 5,538,489 ("Magid") ........................... 15

        3.    Neil Sclater, Mechanisms & Mechanical Devices Sourcebook ("Sclater") ................................................. 17

    C.    District Court and PTAB Proceedings ................................ 18

        1.    The Board Found Chickering Taught a *Curved Running Surface* ...................................................... 20

        2.    The Board's Findings Regarding the Combination of Chickering and Magid ............................................ 24

        3.    The Board's Findings Regarding the Combination With Sclater ................................................................ 26

        4.    The Board's Weighing of Secondary Considerations .......................................................... 28

            a.    No Rebuttable Presumption of Nexus ................ 29

            b.    No Direct Showing of Nexus .............................. 30

SUMMARY OF THE ARGUMENT ..........................................................34

ARGUMENT .............................................................................................35

    A.    Standard of Review .................................................................35

    B.    The Board Correctly Applied the Plain and Ordinary Meaning of the "*running surface*" Limitation .......................36

        1.    The Board did not conflate "*running belt*" and "*running surface*" ...........................................................44

    C.    Substantial Evidence Supports the Board's Obviousness Findings .................................................................................45

        1.    Substantial Evidence Supports the Board's Findings that Chickering Discloses a "*Curved Running Surface*" ...........................................................45

        2.    Substantial Evidence Supports the Board's Findings on Combining Chickering, Magid, and Sclater ....................................................................48

            a.    The Board carefully explained the reasons for combining Chickering, Magid, and Sclater ...........................................................48

            b.    The Board properly rejected Woodway's teaching away arguments .................................54

            c.    The Board properly rejected Woodway's hindsight bias arguments....................................58

         3.    Substantial Evidence Supports the Board's Findings Concerning Secondary Considerations ........62

            a.    No Rebuttable Presumption of Nexus ................63

            b.    No Direct Showing of Nexus ..............................66

                (1)    No Commercial Success .............................69

(2)    Remaining Secondary Considerations....... 70

CONCLUSION AND RELIEF SOUGHT ..............................................72

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ...........................................................................73

# TABLE OF AUTHORITIES

## Cases

*Dionex Softron GmbH v. Agilent Techs., Inc.*,
   56 F.4th 1353 (Fed. Cir. 2023) ...................................................... 35

*Ex parte Jellá*,
   Appeal 2008-1619, 90 USPQ 2d 1009, 2008 WL 5693899 (BPAI
November 3, 2017) ...................................................................... 32, 70

*Ex parte Jun Yang*,
   Appeal 2014-006514,
   2017 WL 1150710 (PTAB February 23, 2017ΩΩ ......................... 32, 70

*Fox Factory, Inc. v. SRAM, LLC*,
   944 F.3d 1366 (Fed. Cir. 2019) ............................................... 62, 66

*Genentech, Inc. v. Chiron Corp.*,
   112 F.3d 495, 42 USPQ2d 1608, (Fed. Cir. 1997) ...................... 44

*Google LLC v. EcoFactor, Inc.*,
   92 F.4th 1049 (Fed. Cir. 2024) ................................................... 36

*In re NTP, Inc.*,
   654 F.3d 1279 (Fed. Cir. 2011) .................................................. 36

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004) .................................................. 39

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ................................................................... 61

*Lectrosonics, Inc. v. Zaxcom, Inc.*,
   IPR2018-01129 (PTAB January 24, 2020) ................................. 67

*Magseis FF LLC v. Seabed Geosolutions (US) Inc.*,
   860 Fed. Appx. 746 (Fed. Cir. 2021) ......................................... 67

*Malta v. Schulmerich Carillons, Inc.,*
    952 F.2d 1320 (Fed. Cir. 1991) ...............................................35-36

*Mars, Inc. v. H.J. Heinz Co., L.P.,*
    377 F.3d 1369, 1376, 71 USPQ2d 1837 (Fed. Cir. 2004) ............. 44

*Merck & Cie v. Gnosis S.P.A.,*
    808 F.3d 829 (Fed. Cir. 2015) ......................................................35

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ..............................36-37, 39, 40, 43

*Polaris Indus., Inc. v. Arctic Cat, Inc.,*
    882 F.3d 1056 (Fed. Cir. 2018) ....................................................54

*Randall Mfg. v. Rea,*
    733 F.3d 1355 (Fed. Cir. 2013) ..........................................26, 61-62

*Realtime Data, LLC v. Iancu,*
    912 F.3d 1368 (Fed. Cir. 2019) ................................................36-37

*Trivascular, Inc. v. Samuels,*
    812 F.3d 1056 (Fed. Cir. 2016) ....................................................35

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996) ................................................ 40, 43

*Volvo Penta of the Am., LLC v. Brunswick Corp.,*
    81 F.4th 1202 (Fed. Cir. 2023) ........................................ 62, 63, 66

*Western Union Co. v. MoneyGram Payment Sys., Inc.,*
    626 F.3d 1361 (Fed. Cir. 2010) .................................................68-69

*Wyers v. Master Lock Co.,*
    616 F.3d 1231 (Fed. Cir. 2010) ....................................................62

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| '884 Patent | U.S. Patent No. 10,561,884 B2 |
| POSA | Person of Ordinary Skill in the Art |
| PTAB | Patent Trial and Appeal Board |

## STATEMENT OF RELATED CASES

No appeal in or from the same proceeding in the Patent and Trademark Office was previously before this or any other appellate court.

The following cases are known to counsel to be pending in this or any other court of agency that concern the same patent but will **<u>NOT</u>** directly affect or be directly affected by this Court's decision in the pending appeal:

- *Woodway USA, Inc. v. LifeCORE Fitness, Inc.* Case No. 2025-1431, S.D. Cal. (appeal of Woodway USA, Inc v. LifeCORE Fitness, Inc. d/b/a Assault Fitness, Case No. 3:22-cv-00492 (S.D. Cal.) (all claims at issue in this appeal were dismissed with prejudice from the district court case)).

The following cases are known to counsel to be pending in this or any other court of agency that concern related patents that were asserted in the underlying district court case:

- *LifeCORE Fitness, LLC dba Assault Fitness v. Woodway USA, Inc.*, Case No. 2025-1321; 2025-1358, USPTO/PTAB (appeal of IPR2023-00836); and

- *LifeCORE Fitness, LLC dba Assault Fitness v. Woodway USA, Inc.*, Case No. 2025-1324; 2025-1359, USPTO/PTAB (appeal of IPR2023-00849).

## STATEMENT OF THE ISSUES

1. Whether the Patent Trial and Appeal Board ("the Board") properly applied the plain and ordinary meaning of *"running surface"* recited in the challenged claims of U.S. Patent No. 10,561,884 (the '884 Patent), and rejected Woodway's implicit construction, which focused on a runner's "intent" and is contrary to the intrinsic record.

2. Whether substantial evidence supports the Board's determination that claims 30-34, 37-39, 41, 45-49, 57, and 59 of the '884 Patent are unpatentable as obvious over the prior art where the Board weighed the record evidence, credited the testimony of LifeCore's expert, and carefully explained its conclusions.

3. Whether substantial evidence supports Board's determination that Woodway's evidence of secondary considerations does not outweigh LifeCore's evidence that the challenged claims are obvious over the prior art where the Board weighed the record evidence, credited the testimony of LifeCore's expert, and carefully explained its conclusions.

1

## STATEMENT OF THE CASE

This appeal arises from an IPR challenging claims 30-34, 37-54, 57, 59 of the '884 Patent, which Woodway asserted against LifeCore in district court. Appx199-200. On October 22, 2024, the Board issued its final decision finding claims 30–34, 37–39, 41, 45–49, 57, 59 unpatentable and claims 40, 42–44, 50–54 not unpatentable. This appeal is directed to the claims the PTAB found unpatentable which Woodway voluntarily dismissed with prejudice from the district court case. *Woodway USA, Inc v. LifeCORE Fitness, Inc. d/b/a Assault Fitness*, Case No. 3:22-cv-00492 (S.D. Cal.), Dkt. 142 at 5, #2. LifeCore filed a cross-appeal directed to the claims found not unpatentable by the PTAB, i.e., claims 40, 42–44, 50–54; LifeCore hereby withdraws the cross-appeal.

The challenged claims are directed to a manual treadmill with common treadmill features and a *"safety device[1]"* to prevent bidirectional movement of the running belt. On October 24, 2024, based on detailed factual and credibility determinations, the Board found claims 30–34,

---

[1] Appellee uses italics to indicate claim language.

2

37–39, 41, 45–49, 57, 59 unpatentable as obvious over the prior art *i.e.*, the combination of Chickering, Magid, and Sclater. Appx29-58.

Substantial evidence supports the Board's findings. The claim construction issue that Woodway raises with respect to the term "*running surface*" is without merit because it is unsupported by the claim language and is contrary to the teachings of the '884 Patent specification. Woodway's evidence of secondary considerations do not outweigh the strong evidence of obviousness the Board considered below.

## A. The '884 Patent

The '884 Patent relates to manually operated treadmills and mechanisms for controlling the motion of a running belt of the treadmill. Appx64. The '884 Patent discloses a manual treadmill 10 with "a running belt 16 that extends substantially longitudinally along a longitudinal axis 18" of a base 12. Appx92(4:52-54); Appx2892(¶92).



**Appx71, Fig.1**

The treadmill includes a "front shaft assembly 44 [that] includes a pair of front running belt pulleys 62 interconnected with . . . a shaft 64, and the rear shaft assembly 46 includes a pair of rear running belt

4

pulleys 66 interconnected with, and preferably directly mounted to, a shaft 68." Appx93(5:34-39).



**Appx203 citing Appx72, Fig.2 (Annotated)**

The treadmill also includes bearing rails 200 that include a plurality of bearings 208. Appx96(11:20-23). The "running belt 16 is disposed about the front and rear running belt pulleys 62, 66," and "moves substantially along the top profile 210 of the bearing rails 200." Appx93(5:41-43), Appx96(11:36-39). "Accordingly, the running surface 70 has a shape that substantially corresponds to the shape of the top profile 210 of the bearing rails 200." Appx96(11:50-54).

5



**Appx204 citing Appx78, Fig.9 (Annotated)**

The '884 specification explains, with reference to Figures 1, 4-5 that "the running surface 70 is generally non-planar and shown shaped as a substantially complex curve" and includes "the front portion 72, which is adjacent to the front shaft assembly 44, the rear portion 74, which is adjacent to the rear shaft assembly 46, and the central portion 76, which is intermediate the front portion 72 and the rear portion 74." Appx93(6:32-43).



FIG. 4

FIG. 5

**Appx74, Figs.4-5**

The '884 Patent discloses a plurality of "profiles of the running surfaces of manual treadmills" with reference to Figures 7b-7j. Appx92(3:20-22.)

7



**Appx76, Figs.7a-7j**

The running surfaces illustrated in Figures 7b-7h each include "a front portion, a central portion, and a rear portion" and "[e]ach portion has a particular geometric configuration that is concave, convex, or linear; collectively, the portions define the non-planar running surface." Appx95(9:1-7).

The '884 Patent contemplates additional running surface embodiments, for example "a linear portion may replace all or a portion of the curve" and "[a]lternatively, multiple linear portions may be included in a profile of a non-planar surface." Appx95(10:7-10). Additionally, "the non-planar running surface of the manual treadmill 10 may include (or be so defined as to include) more or less than three

8

portions." App95(10:14-16). The '884 Patent also discloses varying the relative length of each portion of the running surface:

> According to an exemplary embodiment, the relative length of each portion of the running surface may vary. In the exemplary embodiment shown, the central portion is the longest. In other exemplary embodiments, the rear portion may be the longest, the front portion may be shorter than the intermediate portion, or the front portion may be longer than the rear portion, etc.

Appx95(10:39-45).

As illustrated in Figure 2 above, and Figure 36 below, the treadmill 12 includes a "safety device shown as a one-way bearing assembly 1300 . . . that is configured to permit rotation of at least one of the front and rear shaft assemblies 44, 46 (and hence the running belt 16) in only one direction[.]" Appx104(27:13-19). The '884 Patent further discloses that "[t]he one-way bearing assembly 1300 comprises a housing 1302 which supports an inner ring 1304 that cooperates with the rear shaft 68 and supports an outer ring 1306 fixed relative to the housing 1302." Appx104(27:22-26). The one-way bearing assembly includes a "plurality of sprags (not shown) [that] are disposed between the inner ring 1304 and the outer ring 1306." Appx104(27:26-27).



**Appx205 citing Appx88, Fig.36 (Annotated)**

The '884 Patent provides scant detail on the one-way bearing design. For example, it does not illustrate the sprags, nor explain their interaction with the inner and outer rings 1304, 1306. Instead, the '884 Patent simply states that each sprag has an "asymmetric" shape to "provide for motion in one direction and prevent rotation in the opposite direction." Appx104(27:28-29). And that the "sprags become wedged between the inner ring 1304 and the outer ring 1306, preventing the counterclockwise rotation of the inner ring and key 1312 disposed therein." Appx104(27:61-64).

Examination of the '884 Patent before the U.S. Patent and Trademark Office focused on the "*safety device*" limitations. Appx210-

212. The Examiner issued three office actions rejecting the "*safety device*" limitations over a different reference each time, and Woodway responded with significant amendments to the "*safety device*" limitations. For example, on October 18, 2018, Woodway filed a response and amended the claims to further specify that the "*safety device*" "*freely rotates*" in a first direction and "*substantially prevents rotation*" in an opposite direction. Appx210 citing Appx886. Woodway filed another response on April 22, 2019, amending the independent claims to further require that "*interference*" between the "*safety device*" and a "*housing*" or "*rotatable elements*" prevents rotation in the second direction. Appx210 citing Appx2581-2592.

The dependent claims add additional common treadmill features, such as pulleys (claims 39, 41), cross-members (claims 31, 48), one-way bearings (claims 33, 38), and support structures to adjust elevation (claim 34, 45, 59). Appx2898(¶102).

**B.   The Prior Art**

### 1.    U.S. Patent No. 3,637,206 ("Chickering")

U.S. Patent No. 3,637,206 issued to Chickering on January 25, 1972. Appx3196. Chickering discloses a "treadmill exercising device having . . . an endless belt disposed about the rollers to provide a tread

surface" where "[t]he tread surface inclines upward toward each end to provide a forward accelerating area and a rear decelerating area." Appx3196. Chickering discloses a dual-belt embodiment and a single-belt embodiment. Appx3197(Figs.1-3).

Figures 1 and 2 illustrate the dual-belt embodiment of the exercise device, including a base 10 formed of two sidewalls 22 and two end walls 23. Appx3198(1:65-68). "A first series of transverse parallel rollers 13 have their ends journaled in arms 14[,]" and "[a] second series of transverse parallel rollers 18 have their ends journaled in arms 19." Appx3198(2:14-15), Appx3198(2:18-19). Chickering discloses that "[a]n endless belt 16 . . . is disposed about the series of rollers 13 to provide a first tread surface 16a" and "[a]n endless belt 25 is disposed about the series of rollers 18 to provide a second tread surface 25a adjacent the first tread surface." Appx3198(2:14-21).



**Appx3197, Figs.1,2**

Chickering discloses that "during each step" a user's foot "moves in an approximate arc" and "may for a brief instant be out of contact with any surface" as it passes over the gap between the first tread surface 16a and the second tread surface 25a:

> When a person is using the exercise device, during each step his foot moves in an approximate arc. The foot first contacts the tread surface 16a as shown in FIG. 1, and moves rearwardly and downwardly, the weight of the person acting to accelerate the motion of the belt 16. <u>Near the bottom of the arc the foot leaves surface 16a and may for a brief instant be out of contact with any surface</u>[2]. However, further rearward movement will bring at least a portion of the foot into contact with tread surface 25a.

Appx3198(2:50-59).

With reference to Figure 3, Chickering discloses a single-belt embodiment that includes "a single endless belt 28 [that] forms both the accelerating and decelerating areas" without a gap in between. Appx3198-3199(2:73-3:2).

---

[2] Emphasis added by Appellee LifeCore unless noted otherwise.



*Fig-3*

**Appx3197, Fig.3**

Chickering further discloses that its single-belt embodiment includes "a single series of rollers 29 [that] are provided journaled in the sidewalls 22 of base 10." Appx3198(3:1-3:2). Each end of the rollers is rotatably mounted to a support arm which is mounted to the frame and "when the endless belt 28 is placed about the rollers, it follows their contour and provides a forward accelerating area and a rear decelerating area which are inclined from the horizontal with each being lowest at their point of nearest proximity." Appx3198-3199(2:73-3:10); *see also* Appx3198(1:72-2:12), Appx3197(Fig.1); Appx2912-2913(¶141).

Chickering further discloses that "[w]hen a single belt is used, it may be necessary to use heavier belting material so that the belt will lie flat upon the rollers without being under tension." Appx3199(3:11-13).

14

### 2.   U.S. Patent No. 5,538,489 ("Magid")

U.S. Patent No. 5,538,489 issued to Magid on July 23, 1996. Appx3182. Magid discloses a manual treadmill with a belt supported by a plurality of rollers or a flat bearing surface. Appx3188, Appx3183.



**Appx218 citing Appx3184, Fig.2, Appx3186, Fig.5 (Annotated)**

Magid also discloses "[a] unidirectional control means 6, 6' is installed to permit only unidirectional movement of the left and right foot belts 4, 4'." Appx3191(4:46-48).



**Appx280 citing Appx3184, Fig.5, Appx3186, Fig.2 (Annotated)**

Magid further discloses that "the control means 6, 6' includes a pair of ratchet gears 61 [annotated above in red] . . . and a pair of pawls 62 [annotated above in green] . . . engaging one of the ratchet gears 61 to permit only unidirectional rotation . . . thereby preventing bidirectional movement of the foot belts 4, 4'." Appx3191(4:49-54); *See also* Appx2909(¶¶132-133).



**Appx3184, Fig.2 (Enlarged)**

### 3. Neil Sclater, Mechanisms & Mechanical Devices Sourcebook ("Sclater")

Sclater is a reference sourcebook titled "Mechanisms and Mechanical Devices Sourcebook, Third Edition" and was published by McGraw-Hill in 2001. Appx3273-3275. Sclater discloses "mechanisms and mechanical devices that have proven themselves in modern products, machines, and systems." Appx3296. Sclater describes ratchet clutches and one-way bearing assemblies that include sprags. Appx3279-3280.

17



**Fig. 1  Precision sprags** act as wedges and are made of hardened alloy steel. In the formsprag clutch, torque is transmitted from one race to another by the wedging action of sprags between the races in one direction; in the other direction the clutch freewheels.

**Appx3283**

Sclater discloses a back stopping mode of operation for a conveyor belt using a "sprag-type clutch[]" in which the "outer race is restrained [to] the stationary frame of the conveyor". Appx3285.

Sclater explains deficiencies of pawl and ratchet clutches as compared to roller and friction-type clutches, including noise and speed limitations. Appx3277-3278, Appx3281; Appx2910-2911(¶¶134-136).

## C.    District Court and PTAB Proceedings

On April 11, 2022, Woodway sued LifeCore in district court, asserting that LifeCore infringes three patents, including the '884 Patent. Appx3094. On October 24, 2022, Woodway filed an amended complaint adding a fourth patent to the litigation. Appx3103-3104. All

18

four patents share a common specification and claim similar subject matter, e.g., each independent claim requires a curved manual treadmill with a "*safety device*" that prevents bidirectional movement of the running belt. LifeCore filed one IPR petition challenging each patent and the PTAB found the majority of the challenged claims unpatentable.

In the IPR at issue in this appeal, LifeCore challenged claims 30-34, 37-54, 57, 59 of the '884 Patent. Appx199-200. The Board instituted review and held an oral hearing on July 24, 2024[3]. Appx7057. On October 22, 2024, the Board issued its final decision finding claims 30–34, 37–39, 41, 45–49, 57, 59 unpatentable and claims 40, 42–44, 50–54 not unpatentable. Appx2, Appx61-62. The Board found claims 30–34, 37–39, 41, 45–49, 57, 59 obvious based on its detailed factual findings that the combination of Chickering, Magid, and Sclater teach the challenged claim limitations, including a "*a running belt . . . compris[ing] a curved running surface,*" Appx33-38 and that a POSA[4] would have combined the

---

[3] Consolidated Oral Hearing with IPR2023-00836 and IPR2023-00849.

[4] The Board noted that "the parties do not indicate that the outcome of our patentability analysis would differ based on the definition of a POSA." Appx13 citing Appx200; Appx4759-4760; Appx6292.

references. Appx39-46.[5] The Board rejected Woodway's secondary considerations argument, finding that Woodway did "not sufficiently establish a nexus between the unique features of the claimed invention and the evidence of secondary considerations." Appx47-56.

On November 22, 2024, Woodway voluntarily "dismissed with prejudice" Count II of its complaint "directed to allegations that LifeCORE's current and past commercially existing products as of November 13, 2024 infringe claims 30-34, 37-39, 41, 45-49, 57, and 59 of U.S. Patent No. 10,561,884." *Woodway USA, Inc v. LifeCORE Fitness, Inc. d/b/a Assault Fitness*, Case No. 3:22-cv-00492 (S.D. Cal.), Dkt. 142 at 5, #2.

### 1. The Board Found Chickering Taught a "*Curved Running Surface*"

The Board found that "Chickering's single-belt embodiment discloses a curved running surface" because "Chickering describes endless belt 28 as following the contour of the rollers with areas that are inclined from the horizontal and meet at their lowest point" and "the

---

[5] There was no dispute that the remaining hardware features (frame, front shaft, rear shaft, bearings, and safety device) were well-known in the art.

rollers meet at their lowest portion (i.e., the central portion) and endless belt 28 is depicted as curved at that point." Appx36 citing Appx3198-3199(2:73-3:10); Appx3197(Fig.3), and Fig. 3 as annotated by LifeCore at Appx278.



**Appx278(Fig.3)**

The Board further found that this disclosure "is consistent with Chickering's disclosure that the single-belt embodiment needs heavier belting and consistent with Dr. Giachetti's testimony that a POSA would know that heavier belting requires a larger turn radius." Appx36-37 citing Appx6344-6345(¶¶27-31). The Board further credited Woodway's expert Dr. Blair's admission that "the running belt would be bending in a very, very small curve at that point to follow those trajectories, the two planes." Appx37 quoting Appx6505(24:23-25).

Woodway argued that "Chickering does not disclose a curved running surface" Appx4763, despite its expert admitting that Chickering's running belt of Figure 3 has a "very small curve." Appx6292-6293 quoting Appx6505(24:23-25).

Woodway then argued that Chickering's disclosure of a user stepping over the gap in the dual-belt embodiment of **Figure 2**, Appx3198(2:50-58), applies to Chickering's single-belt embodiment of **Figure 3**, that does not include a gap. Appx4767-4768. Woodway asserted that "a runner's feet never contact the 'area where the downwardly slanting plane of the forward rollers meets the upwardly slanting plane of the rear rollers,' *i.e.*, the only area where Figure 3 even arguably depicts a curve." Appx4767-4768. Woodway's expert annotated Figure 3 with a break in the red "planes" in the central portion of the running surface for emphasis. Appx4768 citing Appx4899-4900(¶¶93-94).



| EX1013, Fig. 2 | EX1013, Fig. 3 |
|---|---|

**Appx4768 citing Appx4899-4900(¶¶93-94)**

The Board determined Woodway's argument was "insufficiently supported [by the] testimony of Dr. Blair," in view of "the language of claim 30 and the disclosure of the '884 patent." Appx38. The Board found Dr. Blair's testimony inconsistent with claim 30 because "[t]he language of claim 30 does not require the running belt's running surface to only be portions that the runner typically or is intended to run upon." Appx37 citing Appx108(35:58-59).

The Board also found Dr. Blair's testimony "inconsistent with the '884 patent which does not describe the running surface as being limited to the surface that a runner's feet would typically make contact when the user is running on the treadmill during normal use." Appx37-38 citing the '884 Patent's disclosure with reference to "the profiles of running surfaces" in Figures 7a-7j. Appx92(3:16-22), Appx95(10:11-13), Appx95(10:15-16), Appx95(10:39-62).

23

### 2. The Board's Findings Regarding the Combination of Chickering and Magid

The Board found "that Petitioner's analysis and evidence sufficiently shows that a POSA would have modified Chickering to include a safety device as taught by Magid in order to reduce the risk of a user falling." Appx39-40 (citing, *inter alia*, Appx3073(¶¶432-442)). Based on the express teachings of those references and Dr. Giachetti's expert testimony, the Board was:

> persuaded by Petitioner and Dr. Giachetti's testimony that a POSA would have combined the manual curved treadmill disclosed in Chickering with the known technique of a one-way clutch to prevent belt motion in a forward direction as disclosed in Magid in order to prevent a user from falling off the treadmill while mounting or dismounting.

Appx43 (citing, *inter alia*, Appx282-287; Appx6302-6304; Appx6361-6362(¶¶62-65)).

Woodway argued that a POSA would not combine Chickering and Magid because Magid "teaches away" from the combination. Appx4794-4800. Woodway argued that if combined, Magid's use of multiple belts to "'prevent[] the action of the user's left foot from influencing the action of his right foot and vice-versa' would be lost." Appx4795 quoting Appx3192(5:19-27).

Woodway further argued that a POSA would not have combined Chickering with Magid, because Magid's "therapeutic 'walker apparatus,' teaches away from" Chickering's "primary objective [] to provide a user . . . the ability to exercise without the need for 'relying on handles, railings, belts, or the like, for maintaining his balance and his position[,]' thus disclosing a surface that is unsuitable for physically handicapped people and people with uncoordinated feet movement." Appx4799 quoting Appx3190(1:17) and Appx3190(1:40-47).

The Board found Woodway's "teaching away" arguments, Appx4797-4799, unpersuasive finding Woodway "points to differences between Chickering and Magid, but we are not persuaded that those differences – number of belts, use as a therapeutic device as opposed to a recreational exercise device, use of handles – would discourage a POSA from making the proposed combination." Appx41 citing Appx6358-6359(¶¶57-59). The Board further found Woodway's number of belts argument misplaced because they "concern modifying Magid to have a single non-planer belt . . . and do not concern the modification proposed in the Petition," which did not propose modifying Magid in this manner. Appx41-42 citing Appx4795.

The Board disagreed with Woodway's "characterization of Magid as being narrowly related to two-belt walkers used just for therapy." Appx4795-4796, Appx4799-4800 citing Appx4956-4961(¶¶197-205). "As Petitioner points out, Magid discloses that its walker can be broadly used by people exercising. Appx42 citing Appx6302(n2); Appx6328(¶57); Appx3190(1:53-59), Appx3193(7:61-67).

### 3. The Board's Findings Regarding the Combination With Sclater

The Board found "Petitioner's evidence sufficiently shows that it would have been obvious to a POSA to substitute Sclater's one-way sprag-type bearing for Magid's ratchet and pawl one-way mechanism to obtain predictable results, *e.g.*, reduced noise and improved durability." Appx40 (citing, *inter alia*, Appx3044-3046(¶¶378-383), Appx3046-3047(¶384), Appx3079-3080(¶444), Appx3081(¶447)). *See also* Appx44.

The Board found Woodway's hindsight bias arguments "unpersuasive because they are rigidly focused on the alleged lack of a sufficiently particular disclosure of motivation in Sclater, without taking full account of an ordinarily skilled artisan's 'knowledge, creativity, and common sense.'" Appx46 quoting *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013).

The Board found Magid's disclosure of the unidirectional control means 6, 6' as being a ratchet and pawl mechanism in one embodiment, and disclosure that the invention is not limited to the preferred embodiments suggests "that the unidirectional control means 6, 6' could be a unidirectional control mechanism other than the ratchet and pawl described in one embodiment of Magid." Appx44 citing Appx3191(4:47-55), Appx3193(7:61-67).

The Board further found that "Sclater teaches using a sprag-type clutch for back stopping a conveyor belt" Appx44, citing Appx3285 and crediting the testimony of Dr. Giachetti, found that a "POSA would know that sprag-type clutches were also known for use in exercise equipment." Appx44 citing Appx2888(¶89), Appx2954(¶211), Appx3081(¶447); Appx3327-3328; Appx6366-6367(¶76). "Sclater teaches that a friction-type clutch is quieter than a ratchet and pawl mechanism." Appx45 citing Appx3281.

Regarding Sclater's noise and durability improvements, the Board found, quoting Dr. Giachetti, that "'[r]atchet and pawl clutch mechanisms make noise during operation' because an audible 'click'

sound is made when the pawl collides with a gear tooth on the ratchet."
Appx44-45 quoting Appx2952(¶208) and citing Appx2884-2885(¶83).

The Board also credited the testimony of Dr. Giachetti "that roller clutches are better suited for high-speed freewheeling than ratchet clutches because 'the pawl may skip past a few teeth before backstopping the ratchet gear, whereas the sprags are always in contact with the rings and do not need to find a discrete gear tooth to stop' and 'because there are multiple sprags, they distribute the load over a larger surface area.'" Appx45 quoting Appx3080¶445) citing Appx3278, Appx3285.

The Board further found, crediting the testimony of Dr. Giachetti, "that '[a] POSA would have considered a sprag-type one-way clutch bearing [suitable] for an exercise equipment application, such as a treadmill.'" Appx45 quoting Appx2890(¶91), Appx2954(¶211) citing Appx3327-3328 (a catalogue describing a sprag type one-way clutch as an option for "[e]xercise equipment").

### 4. The Board's Weighing of Secondary Considerations

The Board weighed Woodway's evidence of secondary considerations, and found that it "do[es] not outweigh Petitioner's showing that claim 30 would have been obvious over Chickering, Magid, and Sclater." Appx47. Woodway argued its *safety device* was the unique

feature of its claimed invention. Appx4827; Appx5011-5013(¶¶34-41). However, the Board further found that Woodway did "not sufficiently establish a nexus between the unique features of the claimed invention and the evidence of secondary considerations" and therefore gave Woodway's "evidence little weight." Appx56.

### a. No Rebuttable Presumption of Nexus

The Board found that Woodway's "evidence does not sufficiently establish that the different models of its curved manual treadmills are coextensive with the claims of the '884 patent" because, *inter alia*, its numerous curved manual treadmills had different unclaimed distinguishing features. Appx50-51 citing Appx6315-6316 citing Appx6400(27:13-25), Appx6402(28:20-29:13); Appx5328-5330; Appx5814.

The Board found that Woodway indicated that "the Curve XL offered a larger running surface, that the Curve LTG treadmill is a lighter duty version, that Curve FTG treadmill has different handrails and additional features for providing different levels of resistance, that the Curve 3.0 has upgraded software and sophisticated electronics, and the Curve Trainer has a less steep curve that provides a quieter and quicker acceleration, and the EcoMill and EcoMill Legacy has an onboard

generators system that produces power for the display and USB charging station." Appx51. The Board found that Woodway's evidence "points to unclaimed features such as a durable WOODWAY membrane technology, displays, heart-rate monitors, speed outputs, adjustable resistance, sophisticated load cells, data acquisition boards and software, and runner feedback system." Appx51 citing Appx6315-6316 citing Appx6400(27:13-25), Appx6401(28:20-29:13); Appx5328-5330; Appx5814.

Although Woodway and its expert "Dr. Blair broadly assert that these unclaimed features are not significant for the purposes of establishing nexus" Appx4813-4814; Appx4971-4974(¶¶226-228), "neither Patent Owner or Dr. Blair sufficiently explains why these features are insignificant and, at best, Dr. Blair's testimony shows that the '884 patent's claims broadly cover the CURVE treadmill only." Appx51 citing Appx4813-4814; Appx4971-4974(¶¶226-228).

### b. No Direct Showing of Nexus

Woodway argued its "*safety device*" is its claimed invention, but failed to provide a direct nexus between its evidence of secondary considerations and the "*safety device.*" For example, Woodway argued "[t]he commercial success of Patent Owner's products was based on the key features of the claimed invention," Appx4827 and cites Weber's

30

Declaration, Appx5011-5013(¶¶34-41), where the only feature he asserts is "a safety mechanism to control the unintended rotation of the running belt[.]" Appx5011(¶34). Woodway further emphasized the "safety device" as the unique claimed feature:

> Part of Woodway's innovative technology in the CURVE® Line, and what makes it commercially viable due to safety and hazard considerations associated with falling, is the incorporation of a safety device . . . Before Woodway, no one had introduced to the market a . . . treadmill that allowed a user to safely mount, use, and dismount without concern that the running belt would move in an undesired direction.

Appx5001-5002(¶9).

Regarding commercial success, the Board found that Woodway did "not sufficiently establish[] a nexus between its sales and the alleged commercial success." Appx53. The Board "d[id] not credit Mr. Weber's testimony that the alleged commercial success of Woodway's curved, manual treadmills was due to the safety mechanism." Appx53.

As explained by LifeCore, "Woodway's Curve treadmills include unclaimed features that could account for sales, e.g., displays, heart-rate monitors, speed outputs, adjustable resistance, and larger-sizes for larger-athletes, sophisticated load cells, data acquisition boards and software." Appx6316 citing Appx6400(27:13-24), Appx6401(28:20-29:13);

Appx5328-5330. "Further, Woodway's sales could be due to (1) 'industry reputation' . . . (2) 'consumption by purchasers normally tied to [Woodway], or [3] other business events . . . .'" Appx6316 quoting *Ex parte Jellá*, Appeal 2008-1619, 90 USPQ 2d 1009, 2008 WL 5693899, *12 (BPAI November 3, 2017), and citing *Ex parte Jun Yang*, Appeal 2014-006514, 2017 WL 1150710, *8 (PTAB February 23, 2017) (citation omitted).

The Board agreed with LifeCore and further found that "Mr. Weber's testimony indicates that Woodway's alleged commercial success could be due to other factors, such as Woodway's reputation." Appx53 citing Appx6316 citing Appx4998(¶2), Appx5003-5004(¶13).

Regarding industry praise, the Board "reviewed all of Patent Owner's cited evidence and determine[d] that it is insufficient to show industry praise." Appx54 citing Appx6319-6320. The Board found that "[a]lthough Patent Owner's evidence praises the CURVE lines to some extent, the praise is because of features not claimed and not for the claimed invention, which includes the claimed safety device." Appx54. The Board found that "[n]one of the cited evidence mentions the claimed safety device feature." Appx54. For example, the Board found that "Exhibit 2057 indicates that the Curve Legacy was nominated for the

Innovation Award by FIBO because it is 'environmentally friendly', 'has . . . no wear and tear components,' 'not necessary to replace the deck or running belt,' includes '[a] durable WOODWAY membrane technology,' and provides 'direct feedback.'" Appx54 quoting Appx5814. The Board further found "Exhibit 2047 [] insufficient because it is [Woodway's] own press release and, thus, is praise from itself." Appx54.

Regarding copying, the Board "reviewed all of Patent Owner's cited evidence and determine[d] that it is insufficient to show copying of the claimed invention." Appx55. The Board found that "Exhibits 2058–2065 make no mention of a feature resembling the claimed safety device[,]" and did "not credit the conclusory testimony of Mr. Weber, Patent Owner's Director of Sales and Marketing, concerning his observations of alleged copying by others." Appx55 citing Appx5018-5022(¶¶57-67). Finally, the Board found that Woodway's "evidence does not sufficiently show copying of a specific product." Appx55.

Regarding long-felt but unsolved need and passage of time, the Board found that Woodway's evidence "does not sufficiently show that a POSA recognized a need that was long-felt or that others had tried and failed to solve the problems[,]" and that "[n]one of the cited evidence

33

describes failed efforts of others to solve the specific problems addressed by the claimed invention, such as a safety device that prevents bidirectional movement." Appx56 citing Appx4833-4835; Appx6324-6325.

The Board found claims 30–34, 37–39, 41, 45–49, 57, 59 unpatentable as obvious over the combination of Chickering, Magid, and Sclater based on detailed factual and credibility determinations from the record evidence. Appx29-47, Appx57-58. The Board also found Woodway's evidence of secondary considerations did not outweigh the strong evidence of obviousness. Appx47-57.

## SUMMARY OF THE ARGUMENT

1. The Board was correct to reject Woodway's implicit claim construction that the term "*running surface*" requires "a surface with which a runner's feet are intended to make contact when using a treadmill" because it is unclaimed and inconsistent with the '884 Patent specification.

2. Woodway raises four factual challenges to the Board's conclusion that the '884 Patent claims are obvious over the prior art; according to Woodway, (1) Chickering does not disclose a "curved running surface", (2) there is no reason to combine Chickering and Magid, (3) there is no reason to substitute Sclater for Magid

34

in combination with Chickering, and (4) secondary considerations outweigh the obviousness of the '884 Patent claims. Those arguments fail; the Board's determinations are supported by substantial evidence.

3. Woodway's secondary considerations arguments fail to establish: a) a presumption of nexus because Woodway did not show that its products are coextensive with them, and b) a nexus between the alleged unique features of the claimed invention, *i.e.* the "*safety device*", and the evidence of secondary considerations.

## ARGUMENT

### A. Standard of Review

The Board's claim construction is reviewed de novo where, as here, it is based on the intrinsic record. *Dionex Softron GmbH v. Agilent Techs., Inc.*, 56 F.4th 1353, 1358 (Fed. Cir. 2023); *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1061 (Fed. Cir. 2016). The Board's factual findings underlying its obviousness determination (including findings on what a reference teaches and whether there are reasons to combine references) are reviewed for substantial evidence. *Dionex Softron*, 56 F.4th at 1358; *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 833-34 (Fed. Cir. 2015). In reviewing for substantial evidence, this Court will not reweigh the

evidence or disturb the Board's credibility determinations. *See In re NTP, Inc.*, 654 F.3d 1279, 1292-93 (Fed. Cir. 2011); *see also Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1333 (Fed. Cir. 1991).

## B. The Board Correctly Applied the Plain and Ordinary Meaning of the "*running surface*" Limitation

The Board correctly rejected Woodway's argument that the claim term "*running surface*" requires "a surface with which a runner's feet are intended to make contact when using a treadmill." Appx37-38. Instead, the Board applied the plain and ordinary meaning of the term. The Board did not implicitly construe the term, as Woodway argues on appeal. Blue25. "To determine whether a court, or the Board, has construed a claim, it is helpful to look to the outcome of the tribunal's analysis . . . . If the outcome of the analysis of the claim term establishes the scope (e.g., boundaries) and meaning of *the patented subject matter*, the court (or the Board) has mostly likely construed the claim." *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1055 (Fed. Cir. 2024) (citations omitted and emphasis in original). Here, the Board did ***not*** determine the boundaries of the claim term "running surface." Rather, it merely disagreed with Woodway's proposed construction "[b]ecause the intrinsic evidence does not support [Woodway's] proposed construction." *Realtime Data, LLC v.*

*Iancu*, 912 F.3d 1368, 1376 (Fed. Cir. 2019); *see also Phillips v. AWH Corp.*, 415 F.3d 1314, 1314-17 (Fed. Cir. 2005) (en banc). ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.")

Woodway did not expressly request construction of the term "*running surface*" before the Board. Appx4760-4762; Appx6894-6897. Instead, Woodway argued "[a] POSA would understand a treadmill's 'running surface' to be a surface with which a runner's feet are intended to make contact when using the treadmill." Appx4767 quoting Appx4898(¶¶89-90). Woodway cited (only) expert testimony for support, arguing that LifeCore's expert "Dr. Giachetti agrees that a 'running surface' must be a surface 'where the user is expected to place their feet,' and is limited to that portion of the running belt." Appx4767 quoting Appx5068(33:8-10).

On appeal, Woodway makes the same argument, citing the same testimony of Dr. Blair and Dr. Giachetti for support. Blue25-26 citing Appx5068 at 33:8-10. Woodway argues that the Board's "conclu[sion] that

the running surface need not be a portion of the running belt where a user is **<u>expected or intended</u>** to place their feet when running on the treadmill . . . is contradicted by all evidence of record that speaks to this issue." Blue25-26 (emphasis added). Woodway further argued that "[t]he unrebutted testimony of the parties' experts on this point is illustrative." Blue26.

Dr. Giachetti, however, did rebut Woodway's implied construction, stating "I cannot locate any reference to the intent of the runner" in the challenged claims, "so I disagree with this additional requirement." Appx6345(¶28).

Woodway further argues that the Board adopted "a completely different – and largely unarticulated – understanding of 'running surface.'" Blue27-28 quoting Appx37-38. Woodway does not explain what the Board's alleged implicit construction is, only that the Board rejected Woodway's argument. *Id.*

Woodway's argument on appeal is essentially the same as argued before the Board. Blue27-28. Although Woodway did not request construction of the term "*running surface*," the Board analyzed the intrinsic record in view of Woodway's proffered extrinsic evidence. For

example, the Board found that Woodway's argument that "the claim term 'running surface' requires a surface with which a runner's feet are intended to make contact when using a treadmill" was "insufficiently supported [by the] testimony of Dr. Blair," in view of "the language of claim 30 and the disclosure of the '884 patent[.]" Appx38.

First, the Board analyzed the claims in view of Dr. Blair's testimony, as "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Board found Dr. Blair's testimony inconsistent with the claim language because claim 30 requires "*the running belt comprises a curved running surface*"; and "[t]he language of claim 30 does not require the running belt's running surface to only be portions that the runner typically or is intended to run upon." Appx37 citing Appx108(35:58-59).

The Board then analyzed the '884 Patent specification in view of Dr. Blair's testimony and found Dr. Blair's testimony "inconsistent with the '884 patent which does not describe the running surface as being

39

limited to the surface that a runner's feet would typically make contact when the user is running on the treadmill during normal use." Appx37-38 citing the '884 Patent's disclosure with reference to "the profiles of running surfaces" in Figures 7a-7j. Appx92(3:16-22), Appx95(10:11-13), Appx95(10:15-16), Appx95(10:39-62). For example, the Board found that "[t]he '884 patent describes running surface as having portions adjacent to the front and rear shafts assemblies 44 and 46 and a central portion there between." Appx37-38 quoting Appx93(6:34-40).

"[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

On appeal, Woodway argues that "the claim language and the specification – does not speak to the meaning of the 'running surface'." Blue, 28. On the contrary, the '884 Patent describes the running surface in detail. For example, the '884 specification makes clear that the "running surface" (comprising regions 72, 74 and 76) is **not** limited to only the region where a runner places his or her feet while running.



FIG. 4

FIG. 5

**Appx74**

As seen in FIGS. 1 and 4-5, the running surface 70 is generally non-planar and shown shaped as a substantially complex curve according to an exemplary embodiment. The running surface can be generally divided up into three general regions each having a particular geometric configuration, the front portion 72, which is adjacent to the front shaft assembly 44, the rear portion 74, which is adjacent to the rear shaft assembly 46, and the central portion 76, which is intermediate the front portion 72 and the rear portion 74. In the exemplary embodiment seen in FIGS. 1 and 4, the running surface 70 includes a substantially concave curve 80 and a substantially convex curve 82.

Appx93(6:32-43).

The '884 Patent describes many different running surface profiles with reference to Figures 7a-7j, including profiles having portions that

41

may be difficult to run on, such as the convex curve portion 184 of the running surface illustrated in Figure 7j. *See* Appx95(10:11-13).



**Appx77(Fig.7j)**

The '884 Patent contemplates additional running surface variations, for example "a linear portion may replace all or a portion of the curve" and "[a]lternatively, multiple linear portions may be included in a profile of a non-planar surface." Appx95(10:7-10). Additionally, "the non-planar running surface of the manual treadmill 10 may include (or be so defined as to include) more or less than three portions." Appx95(10:14-16). The '884 Patent also discloses varying the relative length of each portion of the running surface:

> According to an exemplary embodiment, the relative length of each portion of the running surface may vary. In the exemplary embodiment shown, the central portion is the longest. In other exemplary embodiments, the rear portion may be the longest, the front portion may be shorter than the intermediate portion, or the front portion may be longer than the rear portion, etc.

Appx95(10:39-45).

This disclosure makes clear that that the "*running surface*" includes embodiments of varying relative lengths, including embodiments where the front or rear portion is longer than the central portion.

The disclosures confirm it would be improper to construe "*running surface*" to exclude end portions or a small curved central portion (i.e., like Chickering's single belt embodiment), as that construction would exclude the variable relative length embodiments disclosed in the '884 Patent. *See* Appx95(10:39-45.) An interpretation of a claim term that excludes a preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support[.]" *Vitronics Corp.*, 90 F.3d 1576 at 1583.

Woodway's emphasis on expert testimony over the intrinsic record is misplaced, because although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (citations and internal quotation marks omitted). Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms . . . ." *Phillips*, 415 F.3d at 1318. Here, Woodway's

proffered expert testimony fails, because it is contradicted by the '884 Patent claims and the specification.

**1.   The Board did not conflate "*running belt*" and "*running surface*"**

Woodway argues that "it is the 'running surface' that must be curved, not the 'running belt[]'" and that "[t]he 'running belt' and 'running surface' are two separate elements in the rejected claims, and therefore cannot refer to the same structure." Blue29. However, claim 30 does not require the running belt and running surface to be separate elements, instead it requires that "*the running belt <u>comprises</u> a curved running surface . . . .*" The term "comprise" is a transitional term which is synonymous with "including," "containing," or "characterized by." *See, e.g., Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1376, 71 USPQ2d 1837, 1843 (Fed. Cir. 2004). *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501, 42 USPQ2d 1608, 1613 (Fed. Cir. 1997) ("Comprising" is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.) (citation omitted). Accordingly, claim 30 does not require the running belt and running surface to be separate elements.

**C.    Substantial Evidence Supports the Board's Obviousness Findings**

In shotgun fashion, Woodway challenges the Board's findings leading to its conclusion that the '884 Patent claims are obvious over the prior art. According to Woodway, (1) Chickering does not disclose a "curved running surface", (2) there is no reason to combine Chickering and Magid, (3) there is no reason to substitute Sclater for Magid in combination with Chickering, and (4) secondary considerations outweigh the obviousness of the '884 Patent claims. Those arguments fail because the Board's determinations are correct and supported by substantial evidence.

**1.    Substantial Evidence Supports the Board's Findings that Chickering Discloses a "*Curved Running Surface*"**

Chickering discloses two embodiments: a dual-belt embodiment with reference to Figures 1-2; and a single-belt embodiment with reference to Figure 3. Appx3197(Figs.1-3). Citing Chickering's dual-belt embodiment that LifeCore did **not** rely on, Woodway argues that "[u]nder the correct ordinary meaning of 'running surface' as supported by intrinsic evidence, the Board's unpatentability findings are clearly erroneous" because "Chickering itself expressly teaches that a runner's foot would not contact the **curved portion** of the running belt when

45

using the Chickering device." Blue30 citing Appx3198(2:50-58). As explained by Dr. Giachetti, Woodway's argument is premised on Chickering's disclosure concerning its **Figures 1-2** dual-belt embodiment that is not applicable to the **Figure 3** single-belt embodiment that LifeCore relies on:

> Woodway/Dr. Blair seem to be conflating Chickering's different embodiments. Chickering discloses, with reference to its dual belt embodiment of Figure 1, that "[n]ear the bottom of the arc the foot leaves surface 16a and may for a brief instant be out of contact with any surface." (Chickering, Ex. 1013, 2:50-58.) Such a statement describes a necessary requirement of the dual belt embodiment because the foot must transition from the front belt and move to the rear belt, crossing the gap between. However, this is not a feature present in the single belt embodiment.

Appx6345(¶29).

Citing the single-belt embodiment that LifeCore relied on, the Board found that "Chickering's single-belt embodiment discloses a curved running surface" because "Chickering describes endless belt 28 as following the contour of the rollers with areas that are inclined from the horizontal and meet at their lowest point" and "the rollers meet at their lowest portion (i.e., the central portion) and endless belt 28 is depicted as curved at that point." Appx36 citing Appx3204-3205(2:73-3:10), and Fig. 3 as annotated by LifeCore at Appx278.



**Appx278**

The Board further found that this disclosure "is consistent with Chickering's disclosure that the single-belt embodiment needs heavier belting and consistent with Dr. Giachetti's testimony that a POSA would know that heavier belting requires a larger turn radius." Appx36-37 citing Appx6344-6346(¶¶27-31). The Board further credited Woodway's expert Dr. Blair's admission that "the running belt would be bending in a very, very small curve at that point to follow those trajectories, the two planes." Appx37 quoting Appx6505(24:23-25). Woodway's arguments regarding the Figure 2 embodiment have no relevance to, and do not undo, the teaching of the Figure 3 embodiment the Board relied on.

### 2. Substantial Evidence Supports the Board's Findings on Combining Chickering, Magid, and Sclater

Woodway does not dispute that the combination of Chickering, Magid, and Sclater teaches the "*safety device*" limitations. Instead Woodway challenges the Board's determination that a POSA would have had reason to combine Chickering with Magid and Sclater for satisfying those limitations. Blue35-53. On appeal, Woodway reargues the same 1) Magid teaches away and 2) Sclater hindsight bias arguments it argued below. Blue35-45, Blue45-52. The Board's factual findings rejecting these arguments, however, are supported by substantial evidence, including expert testimony, which the Board discussed at length. Appx39-46.

### a. The Board carefully explained the reasons for combining Chickering, Magid, and Sclater

As the Board explained, "a POSA would have modified Chickering to include a safety device as taught by Magid [i.e., Magid's unidirectional control means 6,6' – ratchet and pawl mechanism] in order to reduce the risk of a user falling" based on the express teachings of those references and Dr. Giachetti's expert testimony. Appx39-40 (citing, *inter alia*, Appx3073-3079(¶¶432-442)). The Board was further "persuaded by Petitioner and Dr. Giachetti's testimony that a POSA would have combined the manual curved treadmill disclosed in Chickering with the

known technique of a one-way clutch to prevent belt motion in a forward direction as disclosed in Magid in order to prevent a user from falling off the treadmill while mounting or dismounting." Appx43 (citing, *inter alia*, Appx280-285; Appx2943-2947(¶¶187-198); Appx6302-6304; Appx6361-6362(¶¶62-65).

Chickering and Magid are from the same field – manual treadmills for exercise. Appx280-281 citing (1:1-7 "an exercising device on which the user can simulate the acts of walking, jogging and running"); Appx3190(1:53-55), Appx3191(3:23-28) – and both disclose a running belt supported by rollers. Appx281 citing Appx3199(2:73-3:6), Appx3197(Fig.3); Appx3192(6:46-53), Appx3188(Fig.8); Appx3073(¶433.)

"It has long been recognized that users may be injured by falling off a treadmill while mounting or dismounting, or using it." Appx281. For example, Chickering discloses that "[a] person exercising on this type of treadmill is likely to lose his balance because the frictionless surface offers no resistance to the movement of his feet, and he is therefore unable to obtain the leverage necessary for proper balance." Appx3198(1:30-34). Dr. Giachetti explained that "with a curved running surface, such as that disclosed in Chickering, such forward motion is

likely to occur if a user were to step onto the rearward end of the running surface (indicated by the red arrow), causing the foot to unexpectedly move towards the lowest portion of the treadmill" and that "this unexpected motion would be exacerbated" "[i]n the condition where the user adjusts the frame to a generally horizontal position using the front jackscrew[.]" Appx3075((¶437).



**Appx3076**

Magid discloses "a unidirectional control means 6, 6' is installed to permit only unidirectional movement of the left and right foot belts 4, 4'." Appx3191(4:46-48); *see also* Appx282 citing Appx3186(Fig.5), Appx3191(4:46-59); Appx3076(¶438). The Board found Magid's disclosure of the unidirectional control means 6, 6' as being a ratchet and pawl mechanism in one embodiment, and that the invention is not limited to the preferred embodiments "suggests that the unidirectional control means 6, 6' could be a unidirectional control mechanism other than the ratchet and pawl described in one embodiment of Magid." Appx44 citing Appx3191(4:47-55), Appx3193(7:61-67).

The Board further found that it would have been obvious to a POSA to substitute Sclater's one-way sprag-type bearing for Magid's ratchet and pawl one-way mechanism to obtain predictable results, e.g., reduced noise and improved durability." Appx40 (citing, *inter alia*, Appx3044-3047(¶¶378-383), Appx3046-3047(¶384), Appx3079-3080(¶444), Appx3081(¶447). *See also* Appx44.

As found by the Board, "Sclater teaches using a sprag-type clutch for back stopping a conveyor belt." Appx44 citing Appx3285. Crediting Dr. Giachetti's testimony, the Board found that "[a] POSA would know that sprag-type clutches were also known for use in exercise equipment." Appx44 citing Appx2888(¶89), Appx2954(¶211), Appx3081(¶447); Appx3327-3328; Appx6366-6367(¶76).

As explained by Dr. Giachetti, Sclater discloses a back stopping mode of operation for a conveyor belt using a "'sprag-type clutch[]' in which the 'outer race is fastened to [the] stationary frame of [the] conveyor' and a "POSA would have understood that conveyors and treadmills operate the same." Appx6366(¶75).



**Appx3285**

Dr. Giachetti further explained that:

a POSA would have considered a sprag-type one- way clutch bearing for an exercise equipment application, such as a treadmill. For example, Emerson is a bearing catalog from 2001 that specifically describes its NSS Series sprag-type one-way clutch as an option for multiple "Field Applications," including "Exercise equipment," "Food processing equipment," "Printing presses," and "Roll conveyors."

Appx6366-6367(¶76) quoting Appx3285 and citing Appx3327-3328.

The Board credited "the testimony of Dr. Giachetti as to the knowledge of a POSA and the supporting evidence from Sclater" and determined that "Petitioner has sufficiently shown that it would have been obvious to a POSA to substitute a one-way sprag type bearing clutch for Magid's ratchet and pawl one-way mechanism in order to reduce noise and improve durability." Appx45 citing Appx2883¶(81), Appx2952-

52

2953(¶208), Appx2884-2885(¶83), Appx3081-3082(¶445), Appx2890-2892(¶91), Appx2954(¶211).

Regarding Sclater's noise and durability improvements, the Board found, quoting Dr. Giachetti, "that '[r]atchet and pawl clutch mechanisms make noise during operation' because an audible 'click' sound is made when the pawl collides with a gear tooth on the ratchet." Appx44-45 quoting Appx2952-2953(¶208) and citing Appx2884-2885(¶83). However, "Sclater teaches that a friction-type clutch is quieter than a ratchet and pawl mechanism." Appx45 citing Appx3281. The Board also credited the testimony of Dr. Giachetti "that roller clutches are better suited for high-speed freewheeling than ratchet clutches because 'the pawl may skip past a few teeth before backstopping the ratchet gear, whereas the sprags are always in contact with the rings and do not need to find a discrete gear tooth to stop' and 'because there are multiple sprags, they distribute the load over a larger surface area.'" Appx45 quoting Appx3081-3082(¶445) (citing Appx3278, Appx3285).

The Board further found, crediting the testimony of Dr. Giachetti, "that '[a] POSA would have considered a sprag-type one-way clutch bearing [suitable] for an exercise equipment application, such as a

treadmill.'" Appx45 quoting Appx2890-2892(¶91), Appx2954(¶211) (citing Appx3327-3328 (a catalogue describing a sprag type one-way clutch as an option for "[e]xercise equipment").

### b. The Board properly rejected Woodway's teaching away arguments

Woodway argues that the Board applied the incorrect legal standard regarding teaching away by failing to consider the entirety of Magid. Blue35-36, citing *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1070 (Fed. Cir. 2018). On the contrary, the Board considered the references in their entirety, analyzed the differences between Chickering and Magid, but was "not persuaded that those differences – number of belts, use as a therapeutic device as opposed to a recreational exercise device, use of handles – would discourage a POSA from making the proposed combination." Appx41 citing, Appx6358-6359(¶¶57-59). The Board further found Woodway's number of belts argument misplaced because they "concern modifying Magid to have a single non-planer belt . . . and do not concern the modification proposed in the Petition." Appx40-42 citing Appx4795.

The Board disagreed with Woodway's "characterization of Magid as being narrowly related to two-belt walkers used just for therapy."Appx42

citing Appx4799-4800 citing Appx4956-4961(¶¶197-205) because "[a]s Petitioner points out, Magid discloses that its walker can be broadly used by people exercising. Appx42 citing Appx6302(n2); Appx6358-6359(¶57); Appx3190(1:53-59), Appx3193(7:61-67).

Woodway argues that "Magid is focused on safety features whereas Chickering expressly criticized devices that required users to rely on such safety features . . . ." Blue37 citing Appx3198 at 1:40-47. Chickering discloses:

> It is a principal object of this invention to provide a treadmill type exercising device which removes the necessity for external support means for the user.
>
> Another object is to provide such an exercising device upon which the user may accurately simulate the acts of walking, jogging and running without relying on handles, railings, belts, or the like, for maintaining his balance and his position.

Appx3198(1:40-47).

However, Chickering also discloses that:

> While the exercising device is usable without external supports such as handles, railings and the like, such supports may be provided, if desired, without departing from the spirit of the invention.

Appx3199(3:37-41).

As explained by Dr. Giachetti, "Chickering discloses its treadmill may be provided with 'handles, railings and the like'" and "standards

require such features." Appx6363(¶68). Considering Chickering in its entirety, a POSA would have understood that Chickering does not discourage or disparage safety features.

Woodway also argues that "Chickering and all of the other prior art identified by Assault say *nothing* about the risk of falling when mounting or dismounting a curved or multiplaner treadmill." Blue40 (emphasis in original).

Chickering states "[a] person exercising on this type of treadmill is likely to lose his balance because the frictionless surface offers no resistance to the movement of his feet, and he is therefore unable to obtain the leverage necessary for proper balance." Appx3198(1:30-34). Dr. Giachetti explained that Chickering's disclosure applies to mounting and dismounting a curved treadmill, i.e., "with a curved running surface, such as that disclosed in Chickering, such forward motion is likely to occur if a user were to step onto the rearward end of the running surface (indicated by the red arrow), causing the foot to unexpectedly move towards the lowest portion of the treadmill." Appx3075-3076(¶437).



**Appx3076**

Woodway criticizes Dr. Giachetti's analysis as a "bald[] state[ment]", Blue40, however, Woodway described the risk associated with mounting or dismounting a curved treadmill as an inherent risk to the Board. For example, Woodway stated that, "[i]n order for a curved, motorless treadmill to function as intended, it requires free rolling or rotation of the running belt . . . [h]owever, this **<u>necessarily</u>** means that, without intervention, the running belt may move in the forward and backward direction when a user is trying to mount or dismount the treadmill." Appx4757-4758 citing Appx4859-4560(¶33). Woodway's characterization of the risk associated with mounting or dismounting a curved treadmill as an inherent risk supports Dr. Giachetti's testimony that a POSA would have recognized the problem. *See* Appx3075-3076(¶437).

Magid discloses "a unidirectional control means 6, 6' is installed to permit only unidirectional movement of the left and right foot belts 4, 4'."

Appx3191(4:46-48); *see also* Appx282 citing Appx3186(Fig.5), Appx3191(4:46-59); Appx3076(¶438.)

### c. The Board properly rejected Woodway's hindsight bias arguments

The Board further found that "Petitioner's evidence sufficiently shows that it would have been obvious to a POSA to substitute Sclater's one-way sprag-type bearing for Magid's ratchet and pawl one-way mechanism to obtain predictable results, e.g., reduced noise and improved durability." Appx40 (citing, *inter alia*, Appx3044-3047(¶¶378-383), Appx3079-3080(¶384), Appx3079(444), Appx3081(¶447). *See also* Appx44.

Woodway argues that "Sclater does not provide any incentive to select the specific clutch Assault utilizes over any of the dozens of other options that Sclater describes as having the same benefits." Blue46.

However, the Board further found that "Sclater teaches using a sprag-type clutch for back stopping a conveyor belt" Appx44 citing Appx3285. As explained by Dr. Giachetti, Sclater discloses a back stopping mode of operation for a conveyor belt using a "'sprag-type clutch[]' in which the 'outer race is fastened to [the] stationary frame of [the] conveyor' and "[a] POSA would have understood that conveyors and

treadmills operate the same." Appx6366-6367(¶¶75-76) quoting Appx3285 and citing Appx3327-3328.

The Board credited the testimony of Dr. Giachetti, and a catalog (Emerson) cited in his declaration, that a "POSA would know that sprag-type clutches were also known for use in exercise equipment." Appx44 citing Appx2888(¶89), Appx2954(¶211), Appx3081(¶447); Appx3327-3328; Appx6366-6367(¶76).

Woodway argues that LifeCore did not address the clutch selection factors listed in Sclater, e.g., torque to be transmitted, overrunning speed, type of lubrication, mounting characteristics, environmental conditions, and shock conditions. Blue51, citing Appx3285.

However, Dr. Giachetti did consider such factors, and explained in detail how a POSA would have mounted Sclater's one-way bearing clutch assembly to Chickering's treadmill:

> A POSA would have known how to replace Magid's control means with Sclater's one-way bearing assembly. For example, the outer ring would be fixed to the frame either directly or through one or more intermediaries, e.g., a bracket, or support structure. For example, Sclater illustrates below that the outer ring includes tapped holes for receiving fasteners for mounting the one-way bearing to a bracket, and Emerson marketed their commercially available brackets or torque arms. (*See* Ex. 1018 at 38-43.)

The inner ring of the one-way bearing would be secured to the axle of the front roller or rear roller, e.g., with a key/keyway interface, such as that disclosed by Sclater, above and below:

Appx3081-3083(¶¶448-449).



Sclater, Ex. 1017 at 318 (Annotated)

**Appx3081-3083(¶¶448-449), Appx3283(Annotated)**

Dr. Giachetti further explained that a POSA would have understood that since such one-way sprag type clutches were ubiquitous at the time, clutch manufactures already considered such factors. Therefore, commercially available and inexpensive sprag-type clutches would be attractive since they require less design and qualification work to implement. Appx6366-6367(¶76).

For example, as explained by Woodway's expert, Dr. Blair, a user could identify a problem and a potential solution in a catalog, e.g., the

Emerson catalog, Appx3298-3336, and then call the tech support line to confirm their clutch selection. Appx6306 citing Appx6570-6571(89:12-90:12). "Dr. Blair further confirmed that a POSA would have used the Emerson catalog to find a solution for '[p]reventing motion in the unintended direction' on 'a curved manual treadmill.'" Appx6306 citing Appx3298-3336; Appx6585-6586(104:21-105:12); Appx6367-6369(¶¶77-78).

Dr. Blair's explanation indicates it would have been obvious to a POSA to try adding the "safety device" to a curved manual treadmill with a reasonable expectation of success. A POSA would have had "good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 402-403 (2007).

The Board found Woodway's hindsight bias arguments "unpersuasive because they are rigidly focused on the alleged lack of a sufficiently particular disclosure of motivation in Sclater, without taking full account of an ordinarily skilled artisan's 'knowledge, creativity, and

common sense.'" Appx46 quoting *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013).

### 3. Substantial Evidence Supports the Board's Findings Concerning Secondary Considerations

"[S]econdary considerations of non-obviousness . . . simply cannot overcome a strong prima facie case of obviousness." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (internal citations omitted). Here, obviousness is a strong case as the alleged invention is a mere combination of a prior art off-the-shelf one-way clutch with a prior art manual treadmill. Even if considered, "to accord substantial weight to secondary considerations in an obviousness analysis, 'the evidence of secondary considerations must have a 'nexus' to the claims, i.e., there must be 'a legally and factually sufficient connection' between the evidence and the patented invention.'" *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) (internal citations omitted).

"A showing of nexus can be made in two ways: (1) via a presumption of nexus, or (2) via a showing that the evidence is a direct result of the unique characteristics of the claimed invention." *Volvo Penta of the Am., LLC v. Brunswick Corp.*, 81 F.4th 1202, 1210 (Fed. Cir. 2023). "A presumption of nexus requires the product embodies the invention and is

coextensive with it." *Brunswick Corp.*, 81 F.4th at 1211. (internal citation omitted).

The Board weighed Woodway's evidence of secondary considerations, and found that it "do[es] not outweigh Petitioner's showing that claim 30 would have been obvious over Chickering, Magid, and Sclater." The Board further found that Woodway did "not sufficiently establish a nexus between the unique features of the claimed invention and the evidence of secondary considerations." Appx47-56.

### a. No Rebuttable Presumption of Nexus

Woodway relied on a claim chart and the testimony of Dr. Blair purporting to show how its CURVE treadmills embodied the claimed invention. Appx4815-4825. But Woodway failed to show that its products are coextensive with them. Appx4815-4825. *Brunswick Corp.* 81 F.4th at 1211 ("[C]oextensiveness is a separate requirement") (internal citation omitted).

The Board found that Woodway's "evidence does not sufficiently establish that the different models of its curved manual treadmills are coextensive with the claims of the '884 patent" because, *inter alia*, its numerous curved manual treadmills had different unclaimed distinguishing features. Appx50-51 citing Appx6315-6316 citing

Appx6400(27:13-25), Appx6402(28:20-29:13); Appx5328-5330; Appx5814.

Dr. Blair summarized some of the "differences between the original CURVE treadmill [that he charted] and other treadmills within the CURVE line" in his declaration. Appx4971-4974(¶¶ 226–228). The Board cited Woodway's statements regarding these differences, i.e., that "the Curve XL offered a larger running surface, that the Curve LTG treadmill is a lighter duty version, that Curve FTG treadmill has different handrails and additional features for providing different levels of resistance, that the Curve 3.0 has upgraded software and sophisticated electronics, and the Curve Trainer has a less steep curve that provides a quieter and quicker acceleration, and the EcoMill and EcoMill Legacy has an onboard generators system that produces power for the display and USB charging station." Appx51. The Board further found that Woodway's evidence "points to unclaimed features such as a durable WOODWAY membrane technology, displays, heart-rate monitors, speed outputs, adjustable resistance, sophisticated load cells, data acquisition boards and software, and runner feedback system." Appx51 citing

Appx6315-6316 citing Appx6400(27:13-25), Appx6402(28:20-29:13); Appx5328-5330; Appx5814.

Although Woodway and its expert, "Dr. Blair broadly assert that these unclaimed features are not significant for the purposes of establishing nexus[]" Appx51 citing Appx4813-4814; Appx4971-4974(¶¶ 226–228), "neither Patent Owner or Dr. Blair sufficiently explains why these features are insignificant and, at best, Dr. Blair's testimony shows that the '884 patent's claims broadly cover the CURVE treadmill only." Appx51 citing Appx4813-4814; Appx4971-4974(¶¶ 226–228).

Woodway argues on appeal, for the first time, that it "has never made **any** statements to suggest that any unclaimed features of its CURVE® treadmills are of critical significance to their functionality . . . ." Blue59. On the contrary, Woodway's Curve Treadmill Product Manual, which Woodway itself submitted as an exhibit to support its secondary considerations argument, makes clear that the unclaimed toothed belt feature is critical to the functionality of its Curve treadmill because it makes the "curve possible":

> Form-fitted guide rollers on the front and back prevent tracking errors and support the running surface belt; they are coupled by a **toothed belt** and thereby synchronized, thus **<u>making the curve possible</u>**.

Appx5283, emphasis added.

The '884 Patent, incorporates by reference U.S. 5,470,293, which is directed to and claims a "toothed-belt and V-belt means for treadmill." Appx97(14:4-6), Appx97(14:49-53).

Since the toothed belts make the Curve Treadmill "possible," they materially impact the product's functionality. Further, since the toothed belts are claimed in a different patent, the toothed belts are a critical unclaimed feature showing a lack of coextensiveness. *Fox Factory*, 944 F.3d at 1375. ("A patent claim is not coextensive with a product that includes a 'critical' unclaimed feature that is claimed by a different patent and that materially impacts the product's functionality . . . .")

### b. No Direct Showing of Nexus

While Woodway relied on a presumption of nexus, Appx4815-4825, it did not even attempt to show that "the evidence is a direct result of the unique characteristics of the claimed invention." *Brunswick Corp.*, 81 F.4th at 1210. Because it cannot.

"'Where the offered secondary consideration actually results from something other than what is both claimed and *novel* in the claim, there is no nexus'" . . . and "'there must be a nexus to some aspect of the claim not already in the prior art.'" *Lectrosonics, Inc. v. Zaxcom, Inc.*, IPR2018-01129, Paper 33, 33 (PTAB January 24, 2020) (precedential) (citation omitted).

Woodway indicates, and the prosecution history of the '884 Patent confirms, that the alleged inventive aspect is the safety device. Appx4827 citing Appx5011-5013(¶¶34-41); Appx209-211 citing Appx886; Appx2581-2592. Yet, Woodway does not dispute that Sclater discloses such a safety device. Thus, because all elements of the challenged claims are found in the prior art, there is no nexus. Appx4827 citing Appx5011-5013(¶¶34-41); Appx209-211 citing Appx886; Appx2581-2592. *See Magseis FF LLC v. Seabed Geosolutions (US) Inc.*, 860 Fed. Appx. 746, 752 (Fed. Cir. 2021) (affirming the Board's finding of no nexus because prior art discloses the allegedly novel feature).

However, Woodway did not market its "*safety device.*" Appx6310-6311. While Weber testified Woodway "use[s] social media" for marketing, when asked, "How many of your social media posts mention

67

the safety device?" he responded, "I am not aware of us specifically advertising that." Appx6311 citing Appx6418(45:10-15), Appx6419(46:7-8). Weber also claimed the safety device is "listed on our specification sheet" Appx6419(46:8-9). However, Appx6837-6838, does not mention the safety device or its functionality. Additionally, Woodway's webpage regarding "Manual" and "Curve" treadmills does not mention any "safety device." Appx6839-6844. Weber states the safety device is "assumed" by customers who "wouldn't buy the product if it didn't have that[.]" Appx6418(45:17-20). However, no evidence supports this.

Indeed, Woodway's own evidence suggests that any success that the covered products may have, results from other features. For example, the Curve Legacy was nominated for a FIBO Award because it is "environmentally friendly", "has . . . no wear and tear components," "not necessary to replace the deck or running belt," includes "[a] durable WOODWAY membrane technology," and provides "direct feedback." Appx54 quoting Appx5814. There is no mention of the safety device.

Lack of nexus alone is fatal to Woodway's secondary considerations argument. *Western Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d

1361, 1372 (Fed. Cir. 2010) (finding "evidence of secondary considerations irrelevant" without nexus).

### (1)  No Commercial Success

Nor has Woodway offered sufficient evidence to demonstrate commercial success. In fact, unable to establish commercial success with evidence, Woodway argues that it is entitled to a presumption of commercial success because its patents broadly cover its products. Blue60. Not so. To attribute any alleged success of its products, to the claimed invention, Woodway must first demonstrate success. It has not.

First, Woodway's minimal evidence of commercial success "carries little weight," where it may be ascribed to "pre-existing market share." *Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010).

The Board found that Woodway did "not sufficiently established a nexus between its sales and the alleged commercial success." Appx53. As explained above, Woodway did not market its "*safety device.*" Appx6310-6311. The Board "d[id] not credit Mr. Weber's testimony that the alleged commercial success of Woodway's curved, manual treadmills was due to the safety mechanism." Appx53.

As LifeCore explained, "Woodway's Curve treadmills include unclaimed features that could account for sales, e.g., displays, heart-rate monitors, speed outputs, adjustable resistance, and larger-sizes for larger-athletes, sophisticated load cells, data acquisition boards and software." Appx6316 citing Appx6400(27:13-24), Appx6401(28:20-29:13); Appx5328-5330. Further, "Woodway's sales could be due to (1) 'industry reputation' . . . (2) 'consumption by purchasers normally tied to [Woodway], or [3] other business events . . . .'" Appx6316 quoting *Jellá* , 2008 WL 5693899, \*12, and citing *Jun Yang*, 2017 WL 1150710, \*8.

The Board agreed with LifeCore and further found that "Mr. Weber's testimony indicates that Woodway's alleged commercial success could be due to other factors, such as Woodway's reputation." Appx53, citing Appx53 citing Appx6316 citing Appx4998(¶2), Appx5003-5004(¶13).

### (2)  Remaining Secondary Considerations

Regarding the remaining secondary considerations, Woodway asserts that "focused improperly on whether there was a direct nexus between individual claim limitations rather than the CURVE® treadmills as a whole, without ever meaningfully engaging with whether

70

the evidence itself showed the presence of the relevant indicia of nonobviousness." Blue61.

Accordingly, as explained in section C.4.b above, the Board weighed Woodway's evidence of secondary considerations, and found that it "do[es] not outweigh Petitioner's showing that claim 30 would have been obvious over Chickering, Magid, and Sclater." Appx47. Woodway argued its "*safety device*" was the unique feature of its claimed invention, but did not market its "*safety device.*" Appx4827; Appx5011-5013(¶¶34-41); Appx6310-6311. The Board further found that Woodway did "not sufficiently establish a nexus between the unique features of the claimed invention and the evidence of secondary considerations" and therefore gave Woodway's "evidence little weight." Appx56.

# CONCLUSION AND RELIEF SOUGHT

The Court should affirm the Board's decision that Woodway did not meet its burden of proof that Claims 30-34, 37-39, 41, 45-49, 57, and 59 are unpatentable.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

 /s/ Andrew B. Turner
Andrew B. Turner
John M. Halan
John S. LeRoy
Kyle G. Konz
150 W. Second St., Suite 400N
Royal Oak, MI  48067-3846
Telephone:  (248) 358-4400
Facsimile:   (248) 358-3351
Email:  aturner@brookskushman.com
          jhalan@brookskushman.com
          jleroy@brookskushman.com
          kkonz@brookskushman.com

*Counsel for Appellee*

Date: May 19, 2025

# CERTIFICATE OF COMPLIANCE
# WITH TYPE-VOLUME LIMITATIONS

This filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☒ the filing has been prepared using a proportionally-spaced typeface and includes 11,159 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

 /s/ Andrew B. Turner
Andrew B. Turner
John M. Halan
John S. LeRoy
Kyle G. Konz
150 W. Second St., Suite 400N
Royal Oak, MI  48067-3846
Telephone:  (248) 358-4400
Facsimile:   (248) 358-3351
Email:  aturner@brookskushman.com
        jhalan@brookskushman.com
        jleroy@brookskushman.com
        kkonz@brookskushman.com

*Counsel for Appellee*

Date: May 19, 2025