**2025-1323**

# United States Court of Appeals for the Federal Circuit

WOODWAY USA, INC.,

*Appellant,*

– v. –

LIFECORE FITNESS, LLC, dba Assault Fitness,

*Appellee.*

*Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2023-00843.*

## REPLY BRIEF FOR APPELLANT

KADIE M. JELENCHICK
SARAH E. RIEGER
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 271-2400
kjelenchick@foley.com
srieger@foley.com

JACK T. CARROLL
FOLEY & LARDNER LLP
150 East Gilman Street, Suite 5000
Madison, Wisconsin 53703
(608) 257-5035
jcarroll@foley.com

*Counsel for Appellant*

JUNE 23, 2025

 COUNSEL PRESS     (800) 4-APPEAL • (624637)

# TABLE OF CONTENTS

I.      Introduction ..........................................................................................1

II.     Argument ..............................................................................................1

        A.      Assault's New Arguments on Appeal Must Be Rejected ......................1

        B.      The Board's Interpretation of "Running Surface" Is Erroneous ..........3

                1.      The Board Applied an Improper, Implicit Construction ............3

                2.      The "Running Surface" Must Be Curved .................................10

        C.      The Board's Obviousness Findings Are Unsupported by
                Substantial Evidence .......................................................................14

                1.      Chickering Does Not Disclose a "Curved Running
                        Surface" as Claimed ................................................................14

                2.      No Reason Is Identified in the Prior Art to Combine
                        Chickering, Magid, and Sclater .................................................16

                3.      Substituting Sclater's Sprag-Type Clutch Is Improperly
                        Based on Hindsight ..................................................................18

        D.      The Board Improperly Discounted Secondary Considerations ..........20

                1.      Secondary Considerations Must Be Considered
                        Regardless of Obviousness Arguments .....................................20

                2.      The Board Failed to Provide a Factual Analysis of Alleged
                        Unclaimed Features ..................................................................21

                3.      The Board Erred by Improperly Disregarding Unrebutted
                        Evidence that the CURVE Products Are Coextensive with
                        the Asserted Claims and Entitled to Presumption of Nexus
                        .................................................................................................22

                4.      The Board Improperly Ignored Commercial Success ..............23

III.    Conclusion ..........................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
839 F.3d 1034 (Fed. Cir. 2016) ........................................................................20

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) ........................................................................19

*B/E Aero., Inc. v. C&D Zodiac, Inc.*,
962 F.3d 1373 (Fed. Cir. 2020) ........................................................................19

*Bd. of Regents v. BENQ Am. Corp.*,
533 F.3d 1362 (Fed. Cir. 2008) ........................................................................13

*Chemours Co. FC, LLC v. Daikin Indus.*,
4 F.4th 1370 (Fed. Cir. 2021) ..........................................................................23

*Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
677 F.3d 1361 (Fed. Cir. 2012) ........................................................................13

*Diamond v. United States*,
603 F. App'x. 947 (Fed. Cir. 2015) .....................................................................1

*Genentech, Inc. v. Chiron Corp.*,
112 F.3d 495 (Fed. Cir. 1997)...........................................................................10

*Hill-Rom Servs. v. Matal*,
716 F. App'x 996 (Fed. Cir. 2017) ....................................................................13

*In re Power Integrations, Inc.*,
884 F.3d 1370 (Fed. Cir. 2018) ..........................................................................6

*Mars, Inc. v. H.J. Heinz Co., L.P.*,
377 F.3d 1369 (Fed. Cir. 2004) ................................................................. 10, 11

*Novartis AG v. Torrent Pharms. Ltd.*,
853 F.3d 1316 (Fed. Cir. 2017) .....................................................................1, 23

*Plantronics, Inc. v. Aliph, Inc.*,
724 F.3d 1343 (Fed. Cir. 2013) ........................................................................20

*PPC Broadband, Inc. v. Iancu*,
739 F. App'x 615 (Fed. Cir. 2018) .........................................................................21

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013) ...................................................................... 18, 19

*Regents of the Univ. of Minn. v. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013).................................................................................5

*Stratoflex, Inc. v. Aeroquip Corp.*,
713 F.2d 1530 (Fed. Cir. 1983) ............................................................................20

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
8 F.4th 1349 (Fed. Cir. 2021) ..............................................................................21

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
699 F.3d 1340 (Fed. Cir. 2012) ............................................................................20

*Virtek Vision Int'l ULC v. Assembly Guidance Sys., Inc.*,
97 F.4th 882 (Fed. Cir. 2024) ..............................................................................17

*Wyers v. Master Lock Co.*,
616 F.3d 1231 (Fed. Cir. 2010) ............................................................................20

## I.  INTRODUCTION

Although Assault's Response Brief (Dkt. 18, "Response" Or "Resp.") improperly raises certain issues for the first time on appeal, it does not alter the legal errors made by the Board when assessing the "running surface" claim term, the motivations to combine, and the assessment of secondary considerations of non-obviousness. For the reasons set forth below and in Woodway's Principal Brief (Dkt. 16, "Principal Brief" or "Br."), the Board's findings of unpatentability should be vacated and/or reversed.

## II.  ARGUMENT

### A.  Assault's New Arguments on Appeal Must Be Rejected

Arguments raised in the first instance on appeal are waived if not raised below. *Diamond v. United States*, 603 F. App'x 947, 951 (Fed. Cir. 2015) ("As a general principle, appellate courts do not consider issues that were not clearly raised in the proceeding below."); *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1329 (Fed. Cir. 2017) ("[W]e have held that a party waives an argument that it failed to present to the Board because it deprives the court of the benefit of the Board's informed judgment.") (citation omitted). Yet for the first time on appeal, Assault makes new arguments and cites evidence that was not relied on or presented to the Board.

For example, Assault makes new arguments and cites to evidence that was not raised below with respect to the secondary considerations of nonobviousness. Specifically, before the Board, Assault never made any arguments or presented any evidence that any toothed belt—an unclaimed feature—was critical to Woodway's treadmills as it now does on appeal. *Compare* Resp. at 65-66 *with* Appx6316. For the first time on appeal, Assault cites to a Woodway user manual to allege that the unclaimed toothed-belt feature is critical to the treadmill's ability to maintain a curved running surface. Resp. at 65-66 (quoting Appx5283). This evidence and argument were not presented to the Board (*see, e.g.,* Appx6308-6325 (purporting to address secondary considerations evidence but never mentioning a toothed-belt feature) nor addressed by the FWD (*see* Appx47-56 (same)). In fact, that exhibit, numbered EX2028 below, was not cited in any of Assault's briefing, and the quote pulled for the first time on appeal does not appear anywhere in the record. Accordingly, citing to this newly presented evidence and accompanying arguments must be rejected as improper issues raised for the first time on appeal.

As another example, for the first time in response to Woodway's appeal, Assault now presents arguments about the running surfaces described in the '884 Patent specification that were not made before the Board. On appeal, Assault points to Figures 7a-7j for support on its incorrect claim construction position for a curved "running surface." *See* Resp. at 7-9, 41-42. No arguments relying on these figures

were presented below, and Assault supports its position with arguments about Figure 7j in particular (Resp. at 7-9) for the first time on appeal—no such description or argument was made to the Board. *See generally* Appx188-303; Appx6281-6327. Accordingly, the arguments are waived and should not be considered.

**B.      The Board's Interpretation of "Running Surface" Is Erroneous**

Both parties' experts have agreed the claimed "running surface" is a surface that a runner's feet would typically make contact with when running on the treadmill during normal use. Appx4898-4899 at ¶¶ 90-92 ("A POSA would understand a treadmill's 'running surface' to be a surface that a runner's feet would typically make contact when the user is running on the treadmill during normal use"); Appx5068 at 33:8-10 ("The running surface is generally speaking the top of the treadmill where the user is expected to place their feet."). However, the Response fails to acknowledge the inconsistencies in the Board's construction of the term.

**1.      The Board Applied an Improper, Implicit Construction**

The Board's interpretation of "running surface" is improperly broad and goes against the intrinsic and extrinsic evidence presented. First, the Board failed to properly consider the context of the "running surface" term and selectively cited from the '884 Patent specification. For example, the '884 Patent specification makes clear that, while different shapes and different convex/concave curves can be used for the "running surface" (which may further be separated into a front portion 72,

central portion 76, and rear portion 74), a runner's feet must contact each portion of

the running surface when the treadmill is in operation regardless of shape:

> FIG. 5 illustrates a number of possible locations where a user may position her feet. A-C indicate locations along the front portion 72 of the running surface 70 where a user may place their weight bearing foot. When the user positions her weight bearing foot at location A, she will be running with greater speed than if her weight bearing foot was positioned at locations B or C based upon the fact that the force of gravity is able to have a greater effect as the user's weight bearing foot moves from location A towards the rear of the non-planar running surface 70 as the running belt 16 rotates. At location A, gravity is able to have the greatest impact on the user so that the greatest amount of force is translated into rotation of the running belt 16. A user can decrease her relative running speed by positioning her weight bearing foot at locations B or C. As location B is relatively higher along the front portion 72 than C, gravity is able to exert a greater force on the user and the running belt 16 than if the user's weight bearing foot was positioned at location C.

> . . .

> As each of the user's feet move rearward during her stride, the rear portion 74 acts substantially as a physical stop to discourage the user from moving too close to the rear end of the running surface. To this point, **the user's foot has been gathering rearward momentum while moving from the front portion 72, into the central portion 76, and toward the rear portion 74 of the running surface 70**. Accordingly, the user's foot is exerting a significant rearwardly-directed force on the running belt 16. Under Newton's first law of motion, the user's foot would like to continue in the generally rearward direction. The upwardly-inclined rear portion 74, interferes with this momentum and provides a force to counter the rearwardly-directed force of the user's foot by providing a physical

barrier. As the user's non-leading foot moves up the incline (see position D in FIG. 5), the running surface 70 provides a force that counters the force of the user's foot, absorbing some of the rearwardly-directed force from the user and preventing it from being translated into increasing speed of the running belt 16.

Appx94, 7:38-55, 8:10-29 (emphasis added).

The Board failed to consider the specification's discussion of a user's feet making contact with each portion of the running surface. Appx37-38. While the '884 Patent does describe various geometric configurations of the running surface, in every one, the running surface must be configured to allow a user's feet to make contact with each portion when the treadmill is in operation. *See* Appx94 at 7:38-55, 8:4-29. At no time is any surface described or depicted as a "running surface" when the user's feet do not actually or are not intended to contact that surface. Such consistent teachings across all embodiments, regardless of changes in other characteristics, is strong evidence of how a POSA would understand the term "running surface" as used in the claims.

Indeed, where "every single embodiment disclosed in the [relevant patent's] drawings and its written description" describes and depicts the same configuration or structure for a given limitation, those disclosures support a construction incorporating that configuration or structure. *See Regents of the Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013) (affirming construction of claim term to be consistent with the configuration of disclosed embodiments where

the specification "never teaches an embodiment" with a different configuration and "every single embodiment disclosed in the '291 patent's drawings and its written description" showed the same configuration); *In re Power Integrations, Inc.*, 884 F.3d 1370, 1377 (Fed. Cir. 2018) ("[E]very embodiment disclosed in the '876 patent shows a counter that passes voltage, current, or control signals to the digital to analog converter."). Under such circumstances, it is correct to construe the "running surface" limitation as used in the claims consistent with the repeated description of a user's feet contacting the surface.

The Board's construction, on the other hand, is not supported by intrinsic evidence and, indeed, leads to absurd results. Under the Board's construction taken to its logical extreme, even a fully vertical section would satisfy the claim's "running surface" limitation as long as it was immediately adjacent to and continuous with the surface that a user actually uses to run. For example, Chickering's single belt embodiment employs two linear planes—if the rearward portion of Chickering were modified to be fully perpendicular to the ground such that a user could not possibly run on that belt portion, the Board's construction would permit such a configuration to meet the claim limitation. That result would be inconsistent with the intrinsic evidence requiring a user's feet to make contact with each portion of the running surface. *See* Appx94 at 7:38-55, 8:4-29 ("[T]he user's foot has been gathering rearward momentum while moving from the front portion 72, into the central portion

76, and toward the rear portion 74 of the running surface 70."). Moreover, under the Board's interpretation, **_all_** treadmills, including flat conventional treadmill designs, could be argued to exhibit a curved "running surface" insofar as the belt must follow the path of the pulleys at either end of the treadmill and thus is "curved" when the belt wraps onto the underside of the treadmill. Accordingly, there must be some limits to what a "running surface" can encompass.

The Response does not meaningfully rebut the foregoing intrinsic evidence. Instead, it describes different running surface profiles with reference to Figures 7a-7j, and argues that some profiles "may be difficult to run on." Resp. at 41-42. However, it is indisputable that each of the depicted profiles in Figures 7a-7j provide a "running surface" where a user's foot would be intended to contact each portion thereof, as shown:



FIG. 7a

FIG. 7b

FIG. 7c

FIG. 7d

FIG. 7e

FIG. 7f

FIG. 7g

FIG. 7h

FIG. 7i

FIG. 7j

Appx76-77 at Figs. 7a-7j. Even the convex curve portion 184 of the running surface in Figure 7j does not pose any physical barrier to a user's foot from making contact with that portion of the running surface, as the Response suggests for the first time on appeal. Resp. at 41-42.

The Response's alternative arguments fair no better. For example, in addition to its untimely argument discussed above, the Response argues that because the front, central, and rear portions of the running surface may be different lengths relative to each other, and may exhibit different geometric shapes, any possible configuration of running surface with any curve would meet the claim. Resp. at 42-43. More specifically, the Response suggests that a linear front and rear portion may be substantially longer than a curved central portion, as in Chickering's single belt embodiment. Resp. at 42-43. But such an arrangement does not comport with a user

being able to actually run on such a surface. For example, if the Response's example of linear front and rear portions of a running surface were too steep relative to each other such that a user could not physically make contact with any curved central portion, it would be absurd to say such a central portion was a "running surface" as that term is actually used in the '884 Patent.

Further, while the Response argues that a "preferred embodiment" would be excluded if Woodway's proposed construction were adopted, such an argument rings hollow and, indeed, is contradicted by a simple review of the specification. Resp. at 43. None of the running surface profiles from Figures 7a-7j provide the shape the Response suggests, namely two long linear portions with a insubstantial curved portion between the two linear planes. There is no depiction or description of such an embodiment whatsoever, let alone a depiction or description that identifies such an embodiment as "preferred." Assault's arguments are thus at best mistaken or at worst deliberately misleading. Its mischaracterization of the specification is diametrically opposed to the actual teachings of the intrinsic evidence and thus should be rejected.

In addition to the actual intrinsic evidence of record, extrinsic evidence confirms that the Board's construction of "running surface" is erroneous. As explained, both parties' experts understand the "running surface" to be where a runner's feet would make contact. *See, e.g.,* Appx4898-4899 at ¶¶ 90-92; Appx5068

at 33:8-10. This is entirely consistent with the '884 Patent specification and makes sense from the perspective of the plain and ordinary meaning of "running surface," i.e., the surface on which a user is expected to run. It is not possible for someone to run on a treadmill without their feet making contact with the running surface of the running belt. Rather than address this issue, the Board improperly applied a construction that allows any configuration of a running belt to meet the claim, so long as any part of the running surface exhibits any curves, whether or not a runner could physically run on such a curve. This is clearly erroneous and must be reversed.

### 2. The "Running Surface" Must Be Curved

The Response argues that because claim 30 recites "the running belt comprises a curved running surface," the belt and running surface should be considered to be one and the same element. Resp. at 44. This is false and misstates the law. The cases that Assault cites hold simply that "comprising" does not exclude additional, unnamed elements. *See* Resp. at 44 (citing *Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369 (Fed. Cir. 2004) and *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997)). But neither *Mars* nor *Genentech* stand for the proposition that the word "comprises" between running belt and running surface mean that the running surface need not be a distinct, separately identifiable element compared to the running belt as a whole.

Assault first quotes *Mars* as an attempt to define "comprising" as simply "including," "containing," or "characterized by," (implying that the running surface is just a part of the running belt) but the full sentence in the opinion is, "[t]he MPEP specifically provides that the transitional term 'comprising' is synonymous with including, containing, or characterized by, and is open-ended ***and does not exclude additional, unrecited elements or method steps***." *Mars*, 377 F.3d at 1376 (emphasis added). The sentence in its entirety reveals that the emphasis of the Federal Circuit's reasoning is not that "comprising" just means something like "including" without any need for elements to be distinguishable but rather that "comprising" connects distinct elements while leaving open the possibility of additional, unrecited elements.

Similarly, Assault supports its argument with a citation from *Genentech*, namely that "'[c]omprising' is a term of art used in claim language which means that the named elements are essential, ***but other elements may be added and still form a construct within the scope of the claim***." Resp. at 44 (emphasis added). This statement simply reinforces that "comprising" is open-ended and does not support the argument that the running belt and running surface need not be distinctly identifiable. Rather, the running belt and running surface are both "essential" elements, and more elements could be added that still fall within the scope of claim 30. The claim recites that the "running surface" must be curved, not the "running

belt." Thus, some component that is separately identifiable as a "running surface" that is not simply coextensive with the "running belt" must be curved.

Further, those cases cited by Assault that address the word "comprises" or "comprising" in claim language do so only in the context of "comprising" being used as the transition between the preamble and the body of the claim. Claim 30 involves the word "comprises" within the body of the claim, so the cited cases are not directly analogous. However, even within the context of the cases as cited, i.e., where "comprising" is the transition between the preamble and the claim elements, Assault's arguments are plainly absurd. If Assault's arguments are taken to their logical conclusion, they would mean that claim 30's "curved" limitation could be met by any component of the claimed treadmill; after all, the claim recites "A manually powered treadmill, *comprising*: . . . a running belt at least partially supported by the plurality of bearings, wherein the running belt *comprises* a curved running surface," as well as various other elements. Appx108 at Claim 30. Under Assault's strained interpretation of "comprising," the "manually power treadmill" would be one and the same as the running belt and its running surface, so the "curved" limitation could be met by any component of the treadmill, such as the front or rear shafts or the safety device. This, of course, is absurd; it is specifically the "running surface" that is required to be "curved," not any other elements of the claimed treadmill. Just as the shafts or safety devices cannot meet this limitation

simply because the treadmill is "comprising" its various constituent components, the "curved" limitation cannot be met if some portion of the "running belt" other than a separately identifiable running surface is curved simply because the running belt "comprises" the running surface. Assault's efforts to salvage the Board's incorrect claim construction on this basis are nonsensical and should be rejected.

Finally, Assault has cited no law that indicates two different claim elements can be construed to mean the exact same structure. Nor could it, given that the great weight of authority directly contradicts this argument. As Woodway explained at length in its Principal Brief, this Court has recognized a "general presumption that different terms have different meanings." *Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012); Br. at 29-30. Relatedly, this Court's case law also demonstrates that the presence of both of the terms "running belt" and "running surface" in the same claim "strongly suggests that the term ['running belt'], standing alone, is not limited to" nor one and the same as the narrower term "running surface." *See Hill-Rom Servs. v. Matal*, 716 F. App'x 996, 1001 (Fed. Cir. 2017); *see also Bd. of Regents v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("The fact that the claim distinguishes between 'each pre-programmed code' and 'the matched one or more preprogrammed codes' is significant. . . . Different claim terms are presumed to have different meanings. . . . Because 'the matched one or more preprogrammed codes' clearly refers to the pre-

programmed code(s) that are matched with the binary code in the 'matching' step, we conclude that 'each pre-programmed code' must refer to all potential pre-programmed codes in the vocabulary accessed by the method."). While the "running surface" is necessarily a component of the "running belt," it simply cannot be that the "running surface" is fully coextensive with the "running belt" such that any portion of the "running belt" may be "curved" to meet the claim limitations. If that were the case, there would be no reason to include both limitations in the claims. Assault's efforts to argue otherwise lack any legal or evidentiary support and thus should be rejected.

C.     **The Board's Obviousness Findings Are Unsupported by Substantial Evidence**

1.     **Chickering Does Not Disclose a "Curved Running Surface" as Claimed**

The Response implies that, because Chickering has both a two-belt embodiment and a single-belt embodiment, its description of how a runner's foot would interact with the treadmill is not applicable to both embodiments. Resp. at 45-46. But as Woodway's expert testified, the description of the user's feet on the treadmill would apply equally to either embodiment, the difference between them being only the number of belts used. *See* Appx3197 at Figs. 2-3; Appx4899-4900 at ¶¶ 93-94. Accordingly, the description of a user's foot engaging the treadmill is not

only applicable to the two-belt configuration but is also equally applicable to the one-belt configuration.

And the way that Chickering describes a user running on the treadmill is certainly relevant to whether the single-belt embodiment reads on the curved "running surface" claim element. As described, if a user is not physically running on any minimally "curved" portion of the Chickering single-belt embodiment, then it does not satisfy the claim. The purported "curve" in Chickering is at best incidental, minimal, and not a functional running surface—Chickering itself describes a user's foot lifting off of the surface of the belt in order to accommodate the abrupt change in linear direction between the front linear portion and rear linear portion of the running surface. Appx3197-3198 at 2:50-59, Figs. 2-3. The Board improperly disregarded this teaching in Chickering without considering that the description is equally applicable to both the two-belt and single-belt embodiments.

Both the single-belt and two-belt embodiments in Chickering provide nearly identical geometry with two linear sections angled toward each other with "each being lowest at their point of nearest proximity." Appx3199 at 3:2-10; Appx3197 at Figs. 2-3.



The Board improperly relied on vague illustrations and ignored undisputed expert testimony that confirms the teaching in Chickering itself that users do not step on the curved portion of the single-belt embodiment.

### 2. No Reason Is Identified in the Prior Art to Combine Chickering, Magid, and Sclater

The Response's only identification of any teaching in the prior art about the safety concerns regarding mounting and dismounting a curved manual treadmill are citations to Chickering, which provides a generic safety issue of a user losing balance due to the frictionless surface. Resp. at 56. But neither the Response nor the Board has pointed to any teaching in any prior art reference that mounting and dismounting a curved manual treadmill itself presents a safety concern such that a POSA would be motivated to add a one-way mechanism from Magid/Sclater. While the Response counters that Woodway's own briefing identified the issue (Resp. at 57), that is

16

precisely because the safety concern of mounting and dismounting a curved manual treadmill was the specific problem that the inventors of the '884 Patent were trying to solve. But just because the inventors of the '884 Patent recognized and resolved such a safety concern does not mean that the Board properly found any evidentiary support that a POSA would have been motivated to add such a safety device for the express purpose of increasing safety when mounting and dismounting. That particular problem is not addressed in any prior art identified in the Petition, and Dr. Giachetti's bald testimony made with the benefit of hindsight does not change that fact. The Board improperly found a motivation to combine without any evidentiary support identifying the problem of unwanted belt movement in an unintended direction when mounting and dismounting a curved manual treadmill.

Moreover, the Board failed to identify a clear, non-hindsight rationale for combining Chickering's single-belt treadmill with Magid's safety device for a dual-belted, uniplanar treadmill. Where the prior art references are used in different contexts, this is relevant to a motivation to combine analysis, and when a feature from one reference is sought to be incorporated into another, there must be a reasoned basis with evidentiary support for why a POSA would have made such a modification. *Virtek Vision Int'l ULC v. Assembly Guidance Sys., Inc.*, 97 F.4th 882, 888 (Fed. Cir. 2024) ("[T]his case involves nothing other than an assertion that because two coordinate systems were disclosed in a prior art reference and were

therefore 'known,' that satisfies the motivation to combine analysis. That is an error as a matter of law. It does not suffice to simply be known. A reason for combining must exist.").

The only basis articulated by the Board is the alleged safety concern to reduce the risk of a user falling while mounting or dismounting (Appx43)—but again, as discussed, no prior art reference identifies this specific safety concern as relevant to a curved manual treadmill design, and conclusory expert testimony alone is not sufficient. Nor did the Board properly address the teaching away issues between Magid and Chickering. Accordingly, the Board's findings lack substantial evidence.

### 3. Substituting Sclater's Sprag-Type Clutch Is Improperly Based on Hindsight

The Board also improperly relied on general engineering knowledge without showing a motivation to apply it in the appropriate context. For example, the Response itself exemplifies the issues with the Board's reliance on Sclater, namely by continuing to rely on the Emerson reference to fill the gaps left by Sclater. Resp. at 52, 59-61. Emerson is not part of any ground presented in the Petition—it is not prior art relied on in the combinations and cannot be used to provide teachings in the Sclater reference that are simply not there.

The Response reiterates that the Board disregarded hindsight bias arguments because the Board took into account the skilled artisan's knowledge, creativity, and common sense. Resp. at 61-62 (citing Appx46 (quoting *Randall Mfg. v. Rea*, 733

F.3d 1355, 1362 (Fed. Cir. 2013))). But the Board's application of "common sense" to the skilled artisan is not appropriate where there is no "factual foundation to support a party's claim about what one of ordinary skill in the relevant art would have known." *Randall Mfg.*, 733 F.3d at 1362. "[C]ommon sense cannot be used as a 'wholesale substitute for reasoned analysis and evidentiary support . . . .'" *B/E Aero., Inc. v. C&D Zodiac, Inc.*, 962 F.3d 1373, 1380 (Fed. Cir. 2020) (quoting *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016)).

The Board did not provide any reason why the single sprag-type bearing selected from the "more than 2000 different mechanisms and mechanical devices" in Sclater would be chosen by a POSA, and only provided the purported benefits of reduced noise and improved durability. Appx40; Appx44-45; Appx3296. The Board stated that Sclater teaches its sprag-type clutch is quieter than a ratchet and pawl mechanism, but the cited section for Sclater says nothing about noise. Appx45 (quoting Appx3280). And while the Board credited Dr. Giachetti's testimony about how a rachet clutch does make noise (*see* Appx44-45), the Board ignored how Sclater also teaches rachet clutches that did not have any teeth, and would not exhibit the same noise concerns (*see* Appx4804; Appx5029). Moreover, the Board cites to no evidentiary support to demonstrate how a POSA would understand the sprag-type clutch from Sclater as more durable than Magid's rachet clutch.

**D.  The Board Improperly Discounted Secondary Considerations**

**1.  Secondary Considerations Must Be Considered Regardless of Obviousness Arguments**

The Response cites to *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010), seemingly to suggest that secondary considerations need not be considered where a purportedly strong case of obviousness is presented. Resp. at 62. This is not the law—the Board ***must*** address secondary considerations when presented. *See, e.g., Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1355 (Fed. Cir. 2013) ("This court has consistently pronounced that all evidence pertaining to the objective indicia of nonobviousness must be considered before reaching an obviousness conclusion."); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1048 (Fed. Cir. 2016) ("Objective indicia of nonobviousness must be considered in every case where present."); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012) ("[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness.") (quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983)). To the extent Assault argues otherwise, such arguments should be disregarded as contrary to law. When secondary considerations are considered – as they must be – the Board's analysis of those considerations is, again, clearly erroneous.

20

### 2. The Board Failed to Provide a Factual Analysis of Alleged Unclaimed Features

The Board's first and perhaps most significant error came in its misapplication of law and factual errors with respect to the nexus. The law is clear that a fact finder analyzing whether a presumption of nexus applies must "consider the unclaimed features of the stated products to determine their level of significance and their impact on the correspondence between the claim and the products." *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 8 F.4th 1349, 1361 (Fed. Cir. 2021). No such analysis was provided by the Board. On its own, the Board's failure to conduct a reasoned, collective weighing of the evidence of regarding the supposed unclaimed features warrants at least vacatur and remand. *See PPC Broadband, Inc. v. Iancu*, 739 F. App'x 615, 624 (Fed. Cir. 2018) (finding that "[v]acatur is alternatively proper based on the Board's treatment of PPC's evidence concerning objective indicia of non-obviousness" where Board failed to conduct legally sufficient analysis) (unpublished/nonprecedential).

While the Response argues that the '884 Patent's incorporation of a different patent directed to a toothed-belt for a treadmill somehow negates the legal requirement for the Board to assess the significance of unclaimed features, this assertion is flawed for at least two reasons. First, the issue is not whether the '884 Patent incorporates any other patents, it is whether the Woodway CURVE treadmills contain critical unclaimed features that materially impact the product's functionality.

Second, the factual issue of whether any toothed-belt feature is even present in the Woodway CURVE treadmills was neither briefed by Assault nor addressed by the Board. There is no analysis on whether such features are critical and impact functionality. The Board did not make any such determination and thus failed to undertake the full analysis required to support its final conclusions. Its obviousness decision therefore cannot stand.

3. **The Board Erred by Improperly Disregarding Unrebutted Evidence that the CURVE Products Are Coextensive with the Asserted Claims and Entitled to Presumption of Nexus**

Had the Board conducted a proper analysis, there can be no doubt that nexus should have been presumed between Woodway's CURVE line of treadmill products and the challenged claims. In the proceedings below, Woodway presented unrebutted evidence that the CURVE line of treadmill products embody all the limitations of the claims. Once this evidence was presented, the burden was on Assault to present evidence to the contrary; Assault did not present any such evidence. Rather, for the first time on appeal, Assault now cites to a Woodway user manual to allege that the unclaimed toothed-belt feature is critical to the treadmill's ability to maintain a curved running surface. Resp. at 65-66. This evidence and argument were not presented to the Board (*see, e.g.,* Appx6308-6325 (purporting to address secondary considerations evidence but never mentioning a toothed-belt feature)) nor were they addressed by the FWD (see Appx47-56 (same)). Assault's

22

arguments should therefore be rejected as improper issues raised in the first instance on appeal. *Novartis AG*, 853 F.3d at 1329. At bottom, Assault presented no evidence to the Board that would allow a proper analysis of whether any alleged "unclaimed features" are critical and affect the functioning of the CURVE treadmills. That is improper.

### 4. The Board Improperly Ignored Commercial Success

Largely relying on the erroneous finding of no presumption of nexus, the Response also fails to address the related presumption of commercial success when nexus is properly presumed. *Chemours Co. FC, LLC v. Daikin Indus.*, 4 F.4th 1370, 1378 (Fed. Cir. 2021). Here again, Assault did not offer any contrary evidence nor was any cited by the Board. Instead, it simply pointed to its laundry list of allegedly unclaimed features and attorney argument that those features could have contributed to commercial success and industry praise without offering evidentiary support or any other support beyond bald attorney argument. The Board's reliance on such attorney argument over Woodway's evidence was error, and the Board's decision must be reversed.

## III. CONCLUSION

Woodway respectfully asks this Court to reverse the Board's decision finding claims 30-34, 37-39, 41, 45-49, 57, and 59 of U.S. Patent No. 10,561,884 unpatentable as obvious.

Dated: June 23, 2025                    Respectfully submitted,


                                        */s/Kadie M. Jelenchick*


                                        Kadie M. Jelenchick
                                        Sarah E. Rieger
                                        FOLEY & LARDNER LLP
                                        777 East Wisconsin Avenue
                                        Milwaukee, Wisconsin 53202-5306
                                        (414) 271-2400
                                        kjelenchick@foley.com
                                        srieger@foley.com

                                        Jack T. Carroll
                                        FOLEY & LARDNER LLP
                                        150 E Gilman St, Suite 5000
                                        Madison, WI 53703-1482
                                        (608) 257-5035
                                        jcarroll@foley.com

                                        *Attorneys for Appellant*
                                        *Woodway USA, Inc.*

# CERTIFICATE OF COMPLIANCE WITH
# TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

  X   the filing has been prepared using a proportionally-spaced typeface and includes 5,292 words.

\_\_\_\_ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

\_\_\_\_ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Dated: June 23, 2025                 Respectfully submitted,

                                 */s/Kadie M. Jelenchick*

                                 Kadie M. Jelenchick
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 271-2400
kjelenchick@foley.com

*Attorneys for Appellant*
*Woodway USA, Inc.*